

*U.S. Department of Justice*

*Southern District of New York*
*The Silvio J. Mollo Building*
*United States Attorney*

_____

*One Saint Andrew's Plaza*
*New York, New York  10007*

April 15, 2008

**BY FACSIMILE AND HAND DELIVERY**

The Honorable Colleen McMahon
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street, Room 640
New York, New York  10007

> Re:    **United States** v. **Plutarco Angulo-Aguirre et al.,**
>         **S4 07 Cr. 387 (CM)**

Dear Judge McMahon:

      As directed by the Court, the Government respectfully submits this letter to notify the Court and the defendants of certain evidence that the Government may seek to introduce at trial of other charged and uncharged crimes, wrongs, or acts committed by the defendants.  As discussed below, some of the evidence that is the subject of this submission is admissible as direct evidence of the charges in the Indictment, because it arose out of the same transaction or series of transaction as the charged offenses, because it is inextricably intertwined with the evidence regarding the charged offenses, and because it is necessary to complete the story of the crimes on trial.  In addition, or alternatively, other evidence discussed herein is admissible pursuant to Rule 404(b) of the Federal Rules of Evidence ("Rule 404(b)") as background to the conspiracy, and as proof of the defendants' motive, opportunity, intent, preparation, plan, knowledge, and/or absence of mistake or accident with respect to the charges in the Indictment.  Finally, much of the evidence described below is also admissible because it is <u>Giglio</u> material for potential Government witnesses at trial.

## I.    FACTUAL BASIS

      Set forth below is a list of the uncharged and charged crimes that the Government may seek to prove at trial for the purposes stated above.  We have endeavored to provide notice of all possible prior criminal acts committed by the defendants that may arise at trial.  Moreover, we have chosen only those incidents most relevant to the defendants on trial and/or the

The Honorable Colleen McMahon
April 15, 2008


cooperating witnesses' <u>Giglio</u> material.[1]  The "other act" evidence that the Government may seek to offer at trial consists of the following:

      A.     <u>Evidence of Other Actual and Attempted Truck Thefts, Truck Hijackings, and Warehouse Burglaries by Defendants</u>

      The Government will introduce direct testimony and other evidence showing that, between in or about July 2006 and on or about January 3, 2007, <u>i.e.</u>, during and just prior to the period of the conspiracies charged in the Indictment, defendants Angulo-Aguirre, Rodriguez, Victor Diaz, and Cedeno, variously and along with several of their co-conspirators in the charged kidnapping and robbery conspiracies, participated in actual and attempted truck thefts, attempted truck hijackings, and warehouse burglaries not specifically identified in the Indictment.  The defendants and their co-conspirators generally carried out these acts by locating a truck (or warehouse) containing merchandise that they wanted to steal, and then hotwiring and stealing the truck, following the truck in an attempt to overtake or steal it, or breaking into the warehouse to steal merchandise.

      The Government will introduce evidence of these acts in the first instance because they constitute <u>Giglio</u> material for one or more cooperating witnesses in this case.[2]  Additionally, however, these crimes were committed immediately prior to or during the period of the charged robbery and kidnapping conspiracies – always by two or more of the participants in the indicted conspiracy, acting in concert – and are inextricably intertwined with and necessary to complete the story of those conspiracies.  Therefore, the crimes set forth below are admissible both as direct evidence of the charged conspiracy, and as background evidence pursuant to Rule 404(b).

---

[1] The Government's investigation is ongoing.  To the extent that we become aware – prior to and during the course of trial – of additional uncharged crimes that the Government will seek to prove, we will provide prompt notice to the Court and defense counsel.

[2] The Government also has information that defendants Rodriguez, Cedeno, and Angel Diaz engaged in narcotics transactions with a cooperating witness in this case ("CW-1").  At this point, even though the evidence is <u>Giglio</u> material for CW-1, the Government is not seeking to introduce that evidence against the defendants, because it is not relevant to the charged conspiracies.  Although the Government will ask CW-1 about his prior narcotics crimes, the Government will not elicit with whom CW-1 engaged in those crimes unless defendants open the door to such testimony.

The Honorable Colleen McMahon
April 15, 2008

These actual and attempted thefts and hijackings include:

(a)     Angulo-Aguirre's, Victor Diaz's, and one or more other participants in the
        charged conspiracy's burglary of a warehouse in Blauvelt, New York (the
        same warehouse from which the truck described in Counts Two and Five
        of the Indictment departed) on or about July 4, 2006, as well as their
        repeated attempts to hijack trucks leaving from that warehouse in or about
        summer 2006;

(b)     Angulo-Aguirre's and one or more other participants in the charged
        conspiracy's theft of a truck containing Sears merchandise in or about July
        2006;

(c)     Angulo-Aguirre's and one or more other participants in the charged
        conspiracy's theft of a truck containing marble in or about summer 2006;

(d)     Angulo-Aguirre's, Victor Diaz's, and one or more other participants in the
        charged conspiracy's theft of a truck containing meat products in or about
        summer 2006;

(e)     Angulo-Aguirre's, Victor Diaz's, and one or more other participants in the
        charged conspiracy's theft of a truck containing Tropicana juice in or
        about summer 2006;

(f)     Angulo-Aguirre's and one or more other participants in the charged
        conspiracy's attempted theft of a truck in Linden, New Jersey on or about
        August 6, 2006, after which they were stopped in a van that contained a
        black ski mask, three sets of gloves, three flashlights, a pry bar, a large
        plumbers' wrench, channel locks, screwdrivers, pipes, and the top portion
        of a padlock which appeared to have been broken;

(g)     Angulo-Aguirre's, Victor Diaz's, and one or more other participants in the
        charged conspiracy's theft of a truck from a perfume warehouse on Long
        Island in or about September or October 2006;

(h)     Angulo-Aguirre's, Victor Diaz's, and one or more other participants in the
        charged conspiracy's theft of several trucks containing designer luggage in
        or about October 2006;

The Honorable Colleen McMahon
April 15, 2008

       (i)     Angulo-Aguirre's, Rodriguez's, and one or more other participants in the charged conspiracy's theft of a truck containing more than $1,000,000 worth of perfume products from a warehouse in Jersey City, New Jersey on or about October 31, 2006;

       (j)     Rodriguez's and one or more other participants in the charged conspiracy's theft of a truck containing olive oil in or about October 2006;

       (k)     Rodriguez's, Cedeno's, and one or more other participants in the charged conspiracy's theft of sneakers from a warehouse in Brooklyn in or about November or December 2006;

       (l)     Rodriguez's and one or more other participants in the charged conspiracy's theft of two trucks containing L'Occitane cosmetic products in or about December 2006;

       (m)     Rodriguez's, Cedeno's, and one or more other participants in the charged conspiracy's attempted hijacking of a truck containing Clarins cosmetic products in Orangeburg, New York, in or about November or December 2006;

       (n)     Rodriguez's, Cedeno's, and one or more other participants in the charged conspiracy's attempted hijacking of a truck containing perfume products near the New Jersey Turnpike in or about December 2006; and

       (o)     Rodriguez's, Cedeno's and one or more other participants in the charged conspiracy's attempted hijacking of a truck containing perfume products in or about Long Island on or about January 2, 2007 and January 3, 2007.[3]

   B.    <u>Defendants' Prior Convictions and Arrests</u>

       In addition to these crimes, defendants have been arrested and convicted for numerous crimes involving theft, violence, and firearms, each of which is admissible under Rule

---

[3] In addition to the specific attempted hijackings described above in Section I.A.(m)-(o), the evidence will show that the defendants, along with one or more participants in the charged conspiracy, often followed trucks around the tri-state area in an effort to track or overtake them. These multiple attempted thefts and/or hijackings are too numerous to detail separately.

The Honorable Colleen McMahon
April 15, 2008

404(b), as explained further, <u>infra</u>.  The Government will introduce evidence of the conduct that led to these arrests and/or the resulting convictions through the testimony of competent witnesses, including the arresting officers, in order to prove defendants' motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident as to the charged armed robberies, weapons possession, and violent offenses, as well as to corroborate the testimony of cooperating witnesses on these subjects.  Where appropriate, the Government will establish that the defendants were convicted of these crimes through their guilty plea allocutions and/or certified records of conviction.  Specifically, the Government may seek to prove the following arrests and convictions:

      1.     <u>Plutarco Angulo-Aguirre</u>[4]

        (a)     On or about April 5, 1995, Angulo-Aguirre was arrested in Dallas, Texas on federal charges of theft from interstate shipment and breaking and entering a carrier facility, in conjunction with an incident in which Angulo-Aguirre and nine other individuals flew from New York to Dallas, conducted advance surveillance on several trucks, and then stole merchandise from an Airborne Express truck and a Federal Express truck.  They were apprehended immediately after having burglarized the Federal Express truck.  Angulo-Aguirre subsequently pleaded guilty to conspiracy to commit theft from an interstate shipment and to breaking and entering a carrier facility.  He was sentenced to six months' imprisonment and three years' supervised release.

---

[4] Angulo-Aguirre has several other arrests and convictions that we currently do not intend to introduce, but as to which we may seek to offer evidence should they become relevant.  These include: (1) an arrest on or about May 28, 1992 for criminal possession of stolen property, possession of burglar tools, resisting arrest, and criminal mischief, as to which he pleaded guilty to burglary in the third degree, illegal entry with intent to commit a crime and was sentenced to five years' probation and a fine; (2) an arrest on about May 7, 1996, along with Victor Diaz, for conspiracy to commit burglary and possession of marijuana, which charges ultimately were dismissed; and (3) an arrest on or about September 3, 1996 for illegal possession of a vehicle identification number, criminal possession of stolen property, and unauthorized use of a vehicle, as to which no disposition is reported.

The Honorable Colleen McMahon
April 15, 2008

        (b)       On or about January 16, 1997, Angulo-Aguirre was arrested in Miami, Florida for grand larceny in connection with his theft of approximately $200,000 worth of packages from a Federal Express van. He subsequently pleaded <u>nolo contendere</u> to grand theft in the first degree, and was sentenced to five years' probation, $23,500 in restitution, and a fine.

    2.    <u>Rafael Rodriguez</u>[5]

        (a)       On or about February 1, 1996, Rodriguez was arrested in Manhattan for murder, criminal use of a firearm, assault, criminal

---

[5] Rodriguez has numerous other arrests and convictions that we currently do not intend to introduce, but as to which we may seek to offer evidence should they become relevant. These include: (1) an arrest on December 11, 1990 for assault, as to which he pleaded guilty to assault in the third degree and was sentenced to 60 days' imprisonment; (2) an arrest on September 24, 1991 for criminal possession of a controlled substance (crack cocaine), as to which he pleaded guilty to criminal possession of a controlled substance in the seventh degree and was sentenced to thirty days' imprisonment or a fine; (3) an arrest on November 27, 1991 for criminal possession of a controlled substance (cocaine), as to which he pleaded guilty to attempted criminal possession of a controlled substance in the third degree, and was sentenced to one to three years' imprisonment; (4) an arrest on December 5, 1991 for assault, as to which no disposition is reported; (5) an arrest on December 17, 1991 for criminal possession of a controlled substance (cocaine and heroin) and resisting arrest, as to which he pleaded guilty to criminal possession of a controlled substance in the seventh degree, and was sentenced to three years' probation; (6) an arrest on February 25, 1992 for criminal possession of a controlled substance (crack) and criminal trespassing, as to which he pleaded guilty to criminal possession of a controlled substance in the fifth degree, and was sentenced to one to three years' imprisonment; (7) an arrest on February 25, 1993 for resisting arrest and disorderly conduct, as to which no disposition is reported; (8) an arrest on March 31, 1993 for assault, as to which no disposition is reported; (9) an arrest on May 19, 1993 for criminal sale of a controlled substance, as to which he pleaded guilty to criminal sale of a controlled substance in the fifth degree and was sentenced to two to four years' imprisonment; (10) an arrest on January 25, 1996, for burglary, criminal possession of a weapon, criminal possession of a controlled substance, and use of drug paraphernalia, as to which he pleaded guilty to attempted criminal possession of a controlled substance in the third degree and was sentenced to three to six years' imprisonment; and (11) an arrest on May 25, 2004 for possession of marijuana, as to which no disposition is reported.

The Honorable Colleen McMahon
April 15, 2008

        possession of a weapon, and reckless endangerment, in conjunction with a shootout that occurred on the street in which Rodriguez fired numerous shots from a Mac-11 pistol, seriously injuring five people, including three innocent bystanders.  Rodriguez subsequently pleaded guilty to criminal possession of a weapon in the third degree, and was sentenced to 42 months' imprisonment.

      3.      <u>Angel Diaz</u>[6]

---

   [6] Angel Diaz has numerous other arrests and convictions that we currently do not intend to introduce, but as to which we may seek to offer evidence should they become relevant.  These include: (1) an arrest on March 22, 1986 for criminal possession of stolen property, grand larceny, possession of burglar tools, and criminal mischief, for which no disposition is reported; (2) an arrest on August 22, 1987 for assault, for which no disposition is reported; (3) an arrest on November 5, 1987 for assault and criminal possession of a controlled substance, which charges were subsequently dismissed; (4) an arrest on June 8, 1988 for grand larceny and criminal possession of stolen property, as to which no disposition is reported; (5) an arrest on October 18, 1988 for grand larceny and criminal possession of stolen property, as to which no disposition is reported; (6) an arrest on October 20, 1989, Angel Diaz was arrested in Manhattan for murder and criminal possession of a weapon (a knife), as to which no disposition is reported; (7) an arrest on March 11, 1990 for grand larceny, criminal possession of stolen property, resisting arrest, and unauthorized use of a vehicle, for which no disposition is reported; (8) an arrest on May 20, 1990 for grand larceny, criminal possession of stolen property, and unauthorized use of a vehicle, while driving a stolen car, as to which he pleaded guilty to criminal possession of stolen property in the third degree and was sentenced to one year imprisonment; (9) an arrest on September 24, 1990 for criminal mischief, grand larceny, and possession of burglar tools, as to which no disposition is reported; (10) an arrest on October 1, 1990 for grand larceny and fraudulent accosting, as to which he pleaded guilty to fraudulent accosting and was sentenced to thirty days' imprisonment; (11) an arrest on December 23, 1990 for criminal trespassing, for which no disposition is reported; (12) an arrest on April 28, 1991 for criminal possession of a controlled substance (heroin), for which no disposition is reported; (13) an arrest on May 21, 1991 for robbery, assault, and criminal possession of a weapon (knives and large sharp instruments), as to which no disposition is reported; (14) an arrest on November 6, 1991 for grand larceny, criminal possession of stolen property and unauthorized use of a vehicle, for which no disposition is reported; (15) an arrest on  February 1, 1999 for assault, criminal attempt, and fraudulent use of a credit card, for which no disposition is reported; (16) an arrest on April 14, 1999 on federal charges of passing and possession of counterfeit United States obligations, as to which Diaz pleaded guilty to possession of counterfeit federal reserve notes and received a

The Honorable Colleen McMahon
April 15, 2008

(a)     On or about February 9, 1991, Angel Diaz was arrested in Manhattan for criminal possession of a weapon when he was found in possession of a .45 caliber Smith and Wesson revolver. Diaz subsequently pleaded guilty to criminal possession of a weapon in the fourth degree and was sentenced to six months' imprisonment.

(b)     On or about March 30, 1991, Angel Diaz was arrested in Manhattan for criminal possession of a weapon, criminal use of a firearm, reckless endangerment, and criminal possession of stolen property, in connection with a car stop after a report of gunshots was made. Diaz was found in the car, in possession of a loaded .380 pistol and a .357 magnum pistol. Diaz subsequently pleaded guilty to criminal possession of a loaded firearm in the third degree and was sentenced to one year imprisonment.

(c)     On or about November 8, 1991, Angel Diaz was arrested in Manhattan for theft of services, in conjunction with an incident in which Diaz and four others robbed an individual of personal property, and then stole another individual's car at gunpoint, fleeing the scene. Diaz subsequently pleaded guilty to robbery in the second degree, grand larceny in the fourth degree, criminal possession of stolen property in the fourth degree, and unauthorized use of a vehicle, and was sentenced to two to six years' imprisonment on the robbery, 16 months' to four years' imprisonment on the grand larceny and stolen property charges, and to one year imprisonment on the unauthorized use of a vehicle charge.

(d)     On or about December 19, 1991, Angel Diaz was arrested in Manhattan for criminal possession of a weapon and unauthorized use of a vehicle in conjunction with an incident in which he and four others were stopped while riding in a stolen car containing a loaded 12-gauge shotgun and a pair of handcuffs. Diaz subsequently pleaded guilty to criminal possession of a weapon in

---

sentence of 21 months' imprisonment, restitution, and three years' supervised release; and (17) an arrest on August 7, 2001 for theft of services and possession of marijuana, for which no disposition is reported.

The Honorable Colleen McMahon
April 15, 2008

the third degree and was sentenced to one year imprisonment.

(e)     On or about May 23, 1992, Angel Diaz was arrested in Manhattan for murder, assault, criminal possession of a weapon, and endangering the welfare of a child in conjunction with a shooting occurring near Central park in Manhattan in which Diaz and three others shot and wounded five individuals, collectively firing 37 rounds. Diaz subsequently pleaded guilty to attempted murder and was sentenced to two to six years' imprisonment.

(f)     On or about August 28, 2001, Angel Diaz was arrested in Manhattan for robbery, assault, resisting arrest, and grand larceny, in conjunction with an incident in which he was stopped by police while driving a stolen car. Diaz fled as police approached and attempted to carjack another vehicle as he fled. Diaz subsequently pleaded guilty to grand larceny in the third degree and was sentenced to 42 months' to seven years' imprisonment.

(g)     On or about November 19, 2006, Angel Diaz was arrested in Manhattan for criminal possession of a weapon and reckless endangerment in conjunction with a shooting occurring during an argument in which the victim was grazed with one of seven rounds fired by Diaz. Diaz subsequently was convicted after trial of criminal possession of a weapon in the second degree, criminal possession of a weapon in the third degree, assault in the second degree, and reckless endangerment in the first degree, and received a sentence of fifteen years' imprisonment.

4.     Victor Diaz[7]

---

[7] Victor Diaz has several other arrests and convictions that we currently do not intend to introduce, but as to which we may seek to offer evidence should they become relevant. These include: (1) an arrest on May 7, 1996, with Plutarco Angulo-Aguirre, for conspiracy to commit burglary and possession of marijuana, as to which the charges ultimately were dismissed; (2) an arrest on June 13, 1997 for possession of an altered driver's license, which charge was subsequently dismissed; (3) an arrest on January 16, 2001 for possession of burglar tools, as to which no disposition is reported; (4) an arrest on April 29, 2003 for operating a motor vehicle while intoxicated, as to which Diaz subsequently pleaded guilty to driving while under the

The Honorable Colleen McMahon
April 15, 2008

      (a)     On or about June 7, 1995, Victor Diaz was arrested in Glen Rock, New Jersey for burglary and theft from a motor vehicle, in conjunction with an incident in which Diaz and several others stole merchandise from a Mandee's delivery truck and fled the scene. Diaz subsequently pleaded guilty to theft in the third degree and was sentenced to four years' probation.

      (b)     On or about June 6, 2003, Victor Diaz was arrested in Miami for burglary of an unoccupied conveyance, in conjunction with his theft of a computer from a Federal Express truck. Diaz subsequently pleaded guilty to grand theft in the third degree and was sentenced to one year of probation.

   5.     Jorge Cedeno[8]

      (a)     On or about March 24, 1995, Cedeno was arrested in Manhattan for criminal possession of a weapon, in conjunction with an incident in which he was accused by a complaining witness of attempting to rob him with a firearm. Cedeno was found in possession of a loaded .38 caliber Smith and Wesson revolver. He subsequently pleaded guilty to criminal possession of a weapon in the third degree, and was sentenced to one year imprisonment.

      (b)     On or about November 18, 1996, Cedeno was arrested in the Bronx for criminal possession of stolen property, in conjunction with an incident in which he was found to be in possession of an NYPD

---

influence of alcohol, and was sentenced to 15 days' imprisonment or a fine; and (5) an arrest on May 4, 2005 for menacing, criminal possession of a weapon (kitchen knife), and harassment in connection with a domestic dispute, for which no disposition is reported.

   [8] Jorge Cedeno has several other arrests and convictions that we currently do not intend to introduce, but as to which we may seek to offer evidence should they become relevant. These include: (1) an arrest on June 21, 1994 for unauthorized use of a vehicle, criminal mischief, grand larceny, and criminal possession of stolen property, as to which no disposition is reported; (2) an arrest on April 12, 1995 for theft of services and possession of marijuana, as to which no disposition is reported; and (3) an arrest on October 9, 2006 for aggravated unlicensed operation of a vehicle, as to which no disposition is reported.

The Honorable Colleen McMahon
April 15, 2008

> bulletproof vest.  He subsequently pleaded guilty to criminal possession of stolen property in the fifth degree, and was sentenced to conditional discharge and five days' community service.
>
> (c)    On or about March 29, 1997, Cedeno was arrested in the Bronx for attempted robbery, assault, and criminal possession of a weapon in the fourth degree, in conjunction with an incident in which he attempted to forcibly take money from the victims, using a firearm. Cedeno subsequently pleaded guilty to robbery in the first degree, and was sentenced to ten years' imprisonment.

## II.    DISCUSSION

Under well-settled principles, all of the foregoing evidence should be admissible at trial, either as direct evidence of the charged offenses, and/or pursuant to Rule 404(b).

### A.    Evidence of Defendants' Other Actual and Attempted Truck Thefts, Truck Hijackings, and Warehouse Burglaries Is Admissible As Direct Proof Of The Charged Offenses

In the first instance, evidence of other actual and attempted thefts and hijackings of trucks and burglaries of warehouses (described in Section I.A above) – during the same time period as the charged kidnappings and robberies, with the same co-conspirators, and using the same or similar methods – is admissible as direct evidence of the charged offenses.  The defendants committed all of these actual and attempted thefts with their co-conspirators in the charged kidnapping and Hobbs Act robbery conspiracies, during and immediately prior to the time period of the charged conspiracies, and in fact between and amidst the charged kidnappings and robberies.

Thus, these other uncharged actual and attempted thefts were part and parcel of the overarching robbery and kidnapping conspiracies involving the defendants and their co-conspirators, which includes the charged robberies, kidnappings, and associated firearms offenses.  The defendants, along with several of their co-conspirators, committed dozens of actual and attempted truck thefts, truck hijackings, and warehouse burglaries at different locations around the tri-state area over a discrete time period, including the three charged robbery/kidnappings.  Because these offenses were committed by the same individuals, during and immediately prior to the same time period, and using the same methods as the charged offenses, the proof of these uncharged thefts is inextricably intertwined with the evidence regarding the robbery and kidnapping conspiracies charged in the Indictment and is admissible as

The Honorable Colleen McMahon
April 15, 2008

direct evidence of those crimes.

   The Second Circuit repeatedly has held that evidence of uncharged criminal activity is admissible when it constitutes intrinsic or direct proof of the charged crimes. <u>See United States</u> v. <u>Baez</u>, 349 F.3d 90, 93-94 (2d Cir. 2003) (upholding admission of sixteen uncharged crimes in racketeering conspiracy prosecution because "where . . . a conspiracy is charged, uncharged acts may be admissible as direct evidence of the conspiracy itself") (internal quotation marks omitted); <u>United States</u> v. <u>Carboni</u>, 204 F.3d 39, 44 (2d Cir. 2000) (holding evidence of uncharged crime admissible as direct evidence of conspiracy "if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial") (internal quotation marks omitted); <u>United States</u> v. <u>Gonzalez</u>, 110 F.3d 936, 942 (2d Cir. 1997) (holding that evidence of attempted burglary occurring around same time as charged felon-in-possession crime was admissible as "crucial background evidence that gave coherence to the basic sequence" of the charged crime); <u>United States</u> v. <u>Thai</u>, 29 F.3d 785, 812-13 (2d Cir. 1994) (holding that evidence of uncharged robberies and assaults is admissible to show the "existence and structure" of the conspiracy); <u>see also</u> <u>Weinstein's Federal Evidence</u>, § 404.20[2][b] (noting that evidence of other wrongs is admissible without regard to Rule 404(b) where those wrongs "were necessary preliminaries to the crime charged"); § 404.20[2][c] (noting that evidence of other acts "is admitted if it contributes to an understanding of the event in question, even if it reveals crimes other than those charged, because exclusion under those circumstances would render the testimony incomplete and confusing"). The uncharged crimes described in Section I.A are not governed by Rule 404(b), but instead are admissible as direct evidence of the charged conspiracies, because they "arose out of the same transaction or series of transactions as the charged offense[s]," they are "necessary to complete the story of the crime on trial," and they are "inextricably intertwined with the evidence regarding the charged offense[s]." <u>Carboni</u>, 204 F.3d at 44.

   Evidence of uncharged crimes committed prior to the period of the charged conspiracies – such as the thefts described in paragraphs I.A(a)-(f)[9] – is admissible for similar reasons. Such evidence informs the jury's understanding of "circumstances surrounding the events or . . . furnish[es] an explanation of the understanding or intent with which certain acts

---

 [9] After the acceptance of responsibility date in this case on April 25, 2008, the Government intends to supersede the current Indictment by expanding the time period of the charged conspiracy to begin in or about July 2006. Therefore, the uncharged acts included in paragraphs I.A(a)-(f) will then be included within the time period of the charged conspiracy. No new discovery will be necessitated by this change.

The Honorable Colleen McMahon
April 15, 2008

were performed," and need not involve a particular defendant.  United States v. Coonan, 938
F.2d 1553, 1561 (2d Cir. 1991) (holding that evidence regarding violent acts committed by
"Westies" before defendant joined group admissible to provide context for defendant's acts and
participation in enterprise).

    B.    <u>All of the Proffered Evidence Is Admissible Under Rule 404(b)</u>

        Additionally or in the alternative, all of the Government's proffered "other acts"
evidence is also admissible under Rule 404(b) to provide background to the charged
conspiracies, and/or to rebut any claim by the defendants that they lacked the requisite
knowledge or intent to commit the charged crimes, or to prove their motive, opportunity,
preparation, plan, identity, or absence of mistake or accident with respect to the charged crimes.
Assuming defendants may present such defenses, the Government may seek to admit evidence of
defendants' numerous prior arrests and convictions involving theft, burglary, armed robbery,
weapons possession, and other violent crimes.

        It is well settled that "other acts" evidence is admissible under Rule 404(b) so
long as the evidence: (1) is advanced for a proper purpose; (2) is relevant to the crimes for which
the defendant is on trial; and (3) has probative value that is not substantially outweighed by any
unfair prejudicial effect.  If requested, such evidence must be admitted with limiting instructions
to the jury.  <u>See</u> <u>United States</u> v. <u>Zackson</u>, 12 F.3d 1178, 1182 (2d Cir. 1993); <u>United States</u> v.
<u>Ramirez</u>, 894 F.2d 565, 568 (2d Cir. 1990) (citing <u>Huddleston</u> v. <u>United States</u>, 485 U.S. 681,
691-92 (1988)); <u>United States</u> v. <u>Smith</u>, 727 F.2d 214, 219-20 (2d Cir. 1984); <u>United States</u> v.
<u>Siegal</u>, 717 F.2d 9, 16-17 (2d Cir. 1983); <u>United States</u> v. <u>Ortiz</u>, 857 F.2d 900, 903 (2d Cir. 1988)
("[O]ther acts or crimes are admissible under Rule 404(b) to prove matters other than the
defendant's criminal propensity").

        The Second Circuit takes an "'inclusionary' approach to the admission of prior-act
evidence," under which "evidence of prior crimes, wrongs, or acts is admissible for any purpose
other than to show a defendant's criminal propensity."  <u>United States</u> v. <u>Lasanta</u>, 978 F.2d 1300,
1307 (2d Cir. 1992) (citations and internal quotations omitted) (emphasis in original); <u>United</u>
<u>States</u> v. <u>Gelzer</u>, 50 F.3d 1133, 1139-40 (2d Cir. 1995) (allowing circumstantial evidence from
prior unrelated and uncharged robbery where it established defendant's connection to a weapon
used in present case).  The Court has broad latitude in determining whether to admit evidence
pursuant to Rule 404(b), and its ruling will be reviewed only for abuse of discretion.  <u>See</u> <u>United</u>
<u>States</u> v. <u>Inserra</u>, 34 F.3d 83, 89 (2d Cir. 1994); <u>United States</u> v. <u>Brady</u>, 26 F.3d 282, 286 (2d Cir.
1994).

The Honorable Colleen McMahon
April 15, 2008

        1.      <u>Evidence of Other Actual and Attempted Truck Thefts, Truck Hijackings,
and Warehouse Burglaries by Defendants Is Admissible Under Rule
404(b) as Background to the Charged Conspiracies</u>

        The Second Circuit repeatedly has held that background evidence of prior crimes
is admissible under Rule 404(b).[10]  <u>See</u> <u>United States</u> v. <u>Rosa</u>, 11 F.3d 315, 333-34 (2d Cir. 1993)
(holding that evidence of prior acts of car theft and drug dealing properly admitted under Rule
404(b) to show development of illegal relationship between defendant and co-conspirator and to
explain how defendant came to play important role in conspiracy); <u>United States</u> v. <u>Lasanta</u>, 978
F.2d at 1307 (affirming decision to admit evidence of prior drug dealing under Rule 404(b) to
explain "how the co-conspirators came to interact with each other, and [to render] more plausible
their joint participation in the heroin and cocaine conspiracies charged in the indictment"),
<u>abrogated on other grounds</u>, 526 U.S. 559 (1999); <u>United States</u> v. <u>Pitre</u>, 960 F.2d 1112, 1119
(2d Cir. 1992) (evidence of prior narcotics transactions admissible under Rule 404(b) as relevant
background information to explain relationship among alleged co-conspirators); <u>United States</u> v.
<u>Roldan-Zapata</u>, 916 F.2d 795, 804 (2d Cir. 1990) (evidence of pre-existing drug trafficking
relationship between defendant and co-conspirator admissible under Rule 404(b) to aid jury's
understanding of how transaction for which defendant was charged came about and his role in it);
<u>see also</u> <u>United States</u> v. <u>Pipola</u>, 83 F.3d 556, 565-66 (2d Cir. 1996) (noting that "legitimate
purpose[s] for presenting evidence of extrinsic acts" under Rule 404(b) include "explain[ing]
how a criminal relationship developed," and "help[ing] the jury understand the basis for the
co-conspirators' relationship of mutual trust," and therefore concluding that "evidence of prior
illicit activities involving [defendant] and his co-conspirators" was properly admissible to
"explain[] to the jury how the relationship between [defendant] and his underlings evolved").
Therefore, all of the uncharged crimes set forth in Section I.A – crimes that were committed
during and immediately prior to the charged conspiracies by the defendants and their co-
conspirators – are admissible under Rule 404(b) as background evidence of the charged
conspiracies, alternatively or in addition to being admissible as direct evidence of the charged
conspiracies, as set forth <u>supra</u>, Section II.A.

---

    [10] This ground for introduction is sometimes confused with the argument that evidence of
uncharged crimes inextricably intertwined with the charged conspiracy should be admissible as
direct evidence of the charged conspiracy.  <u>See</u> Section II.A.  These are, in fact, separate and
distinct bases for admission.  <u>See</u> <u>United States</u> v. <u>Townsend</u>, No. S1 06 Cr. 34 (JFK), 2007 U.S.
Dist. LEXIS 32639, at *8 n.2 and <u>passim</u> (S.D.N.Y. May 1, 2007).

The Honorable Colleen McMahon
April 15, 2008

      2.      <u>All of the Proffered Evidence, Including Evidence of Defendants' Prior Arrests and Convictions, Will Be Admissible if Defendants Raise Defenses Based on Motive, Opportunity, Intent, Knowledge, or Mistake</u>

Additionally, if any of the defendants raise a defense based on motive, opportunity, intent, knowledge, or mistake, all of the proffered evidence, including the defendants' arrests and convictions as set forth in Section I.B, is admissible to rebut such a defense. <u>See</u> <u>Zackson</u>, 12 F.3d at 1182 ("Where a defendant claims that his conduct has an innocent explanation, prior act evidence is generally admissible to prove that the defendant acted with the state of mind necessary to commit the offense charged") (citing <u>United States</u> v. <u>Ramirez-Amaya</u>, 812 F.2d 813, 817 (2d Cir. 1987)).[11]

      a.      <u>Prior Thefts</u>

Angulo-Aguirre's and Victor Diaz's repeated prior arrests and convictions for larceny and theft – all of which involve theft of merchandise from trucks – are clearly relevant to

---

[11] With respect to the timing of the Government's introduction of evidence under Rule 404(b), the Second Circuit has held that "as a general rule, the offer of evidence to prove the defendant's intent or knowledge should await the conclusion of the defendant's case. However, where it is apparent that intent will be in dispute, evidence of prior or similar acts may be introduced during the government's case-in-chief." <u>United States</u> v. <u>Pitre</u>, 960 F.2d 1119, 1120 (2d Cir. 1992); <u>see</u> <u>Inserra</u>, 34 F.3d at 90 ("[A]dmission of similar act evidence to prove intent or knowledge . . . is admissible during the Government's case-in-chief if it is apparent that the defendant will dispute that issue."). Thus, in order to forestall the admission of their prior crimes in the Government's case-in-chief, defendants must to clearly and unequivocally remove knowledge and intent from the case:

> 'When the Government offers prior act evidence to prove an issue, counsel must express a decision not to dispute that issue with sufficient clarity that the trial court will be justified (a) in sustaining objection to any subsequent cross-examination or jury argument that seeks to raise the issue and (b) in charging the jury that if they find all the other elements established beyond a reasonable doubt, they can resolve the issue against the defendant because it is not disputed.'

<u>United States</u> v. <u>Nachamie</u>, 101 F. Supp.2d 134, 138-39 (S.D.N.Y. 2000) (quoting <u>United States</u> v. <u>Figueroa</u>, 618 F.2d 934, 942 (2d Cir. 1980).

The Honorable Colleen McMahon
April 15, 2008

rebutting their expected defenses that they lacked the intent and knowledge jointly to rob the
trucks at issue in this case; to showing that they had the opportunity, preparation, planning
experience, and expertise to commit the charged crimes; and to proving lack of mistake or
accident.  See, e.g., United States v. Thomas, 54 F.3d 73, 81-82 (2d Cir. 1995) (allowing
evidence of prior conviction on charge of transporting stolen money orders in interstate
commerce where it demonstrated knowledge and intent with respect to money orders at issue in
case on trial).

                    b.      Prior Violence and Weapons Possession

            Similarly, Rodriguez's, Angel Diaz's, and Cedeno's various arrests and
convictions for weapons possession and armed robbery, among other violent crimes, are relevant
to rebutting their expected defenses that they lacked the knowledge, intent, opportunity, or
motive to commit the charged robberies, kidnappings, and firearms offenses.  In the context of
Hobbs Act robbery and firearms cases, the Second Circuit has held that where a defendant raises
a claim that he lacked the knowledge, intent, or motive to commit the charged crimes, the
Government is permitted to introduce evidence of that defendant's prior robbery and of his prior
possession of a gun.  See, e.g., United States v. Jamison, 299 F.3d 114, 121 n.3 (2d Cir. 2002)
(holding that when the defendant's intent to commit a robbery and possess a gun illegally are at
issue, the district court properly admitted evidence of the defendant's prior armed robbery as
evidence of the defendant's intent to commit the charged crimes).  Additionally, in the context of
felon-in-possession cases, the Second Circuit has held that evidence of possession of other
handguns is properly admitted to show "'intent, . . . knowledge . . . or absence of mistake or
accident.'"  United States v. Brown, 961 F.2d 1039, 1042 (2d Cir. 1992) (quoting Rule 404(b))
(gun found in defendant's truck was properly admitted 404(b) evidence where defendant denied
that he possessed charged gun found in home).  Several other courts have similarly held.  See
United States v. Cassell, 292 F.3d 788, 795 (D.C. Cir. 2002) ("[E]vidence of [defendant's] prior
gun possessions was relevant to show his knowledge of an intent to possess the firearms
recovered."); United States v. Davis, 154 F.3d 772, 779-80 (8th Cir. 1998), rev'd on other
grounds by Murphy v. United States, 268 F.3d 599 (8th Cir. 2001) (evidence of prior arrest for
possession of a firearm is admissible to prove knowledge in a firearms possession trial); United
States v. Gomez, 927 F.2d 1530, 1534 (11th Cir. 1991) (prior conviction of possession of
firearms relevant to current charge of possession of firearm to rebut claim that the current firearm
possession was for an "innocent purpose" or "was mere accident or coincidence"); United States
v. Davis, 792 F.2d 1299, 1305 (5th Cir. 1986) (holding that a defendant's prior possession of the
same weapons was admissible to establish that his charged possession was knowing); see also
United States v. Slaughter, No. 03 Cr. 455, 2004 WL 856323 (S.D.N.Y. Apr. 20, 2004) (JFK)
(noting that "[the defendant's prior possession of a weapon] goes to the issue of knowledge and
lack of mistake or accident" and is therefore admissible under Rule 404(b)).

-16-

The Honorable Colleen McMahon
April 15, 2008

       In <u>United States</u> v. <u>Brown</u>, the Second Circuit ruled that "similar act" evidence was admissible to prove knowledge, and the absence of mistake or accident, in a firearms case. In that case, the defendant was charged with possession of an unregistered Uzi machine gun, which was seized from his apartment.  During the investigation phase of the case, law enforcement also seized two handguns belonging to the defendant, including one from his truck. At trial, the handguns were allowed to be introduced into evidence, over the defendant's objection, pursuant to Rule 404(b).  The defendant argued that his defense – a denial that he ever actually or constructively possessed the Uzi – removed the issue of intent from the case, thereby rendering Rule 404(b) inapplicable.  The Second Circuit in <u>Brown</u> found, however, that the defendant missed the thrust of the Government's position.  In response to the defendant's contention that the access of others to his apartment might account for the presence of the Uzi, the Government argued that the presence of other firearms, including in his truck, made it more likely that the Uzi belonged to him, thus tending to establish both his knowledge, and the absence of mistake or accident, with respect to the presence of the Uzi in the apartment.  The Second Circuit found that this rationale provided a proper basis for the admission of the other handguns into evidence.  <u>See id.</u> at 1042.

       The District of Columbia Circuit reached the same conclusion based on similar facts in <u>United States</u> v. <u>Cassell</u>, 292 F.3d 788.  On appeal, the defendant argued that because he made a "lack of possession" defense, rather than a "lack of knowledge" defense, his prior gun possession arrest should not have been admitted pursuant to Rule 404(b).  <u>Id.</u> at 792.  The appeals court rejected this distinction, holding that "the concepts of knowledge and intent are [not] so easily separated from possession in this case."  <u>Id.</u> at 793.  The Court further observed:

> the elements of [the defendant's] crime included possession, which in turn requires knowledge and intent.  *A prior history of intentionally possessing guns, or for that matter chattels of any sort, is certainly relevant to the determination of whether a person in proximity to such a chattel on the occasion under litigation knew what he was possessing and intended to do so.*

<u>Id.</u> at 794-95 (emphasis added).

       Moreover, defendants' possession of firearms in the past is permissible to demonstrate opportunity or preparation to commit the charged offenses, since the Government is entitled to prove that the defendants were familiar, from their frequent prior possession of firearms, with their operation and could be relied upon to use a gun in stressful situation.  <u>Cf.</u> <u>United States</u> v. <u>Robinson</u>, 560 F.2d 507, 513 (2d Cir. 1977) (<u>en banc</u>) ("[D]efendant's possession of the gun was also admissible under FRE 404 on the independent ground that it

The Honorable Colleen McMahon
April 15, 2008

tended to show that he had the 'opportunity' to commit the bank robbery, since he had access to an instrument similar to that used to commit it.").

       Here, the Government is offering the evidence for a proper purpose – to demonstrate defendants' criminal intent, opportunity, and preparation to commit the charged armed robbery and firearms offenses, which involved the kidnapping and pistol whipping of several victims over the course of three truck hijackings. The Government anticipates that the defendants may deny any such intent, opportunity, and preparation at trial. Under such circumstances, evidence of the defendants' prior robbery and weapons arrests and convictions are admissible in this case, as the defendants' knowledge and intent are squarely at issue. See Jamison, 299 F.3d at 121 n.3; United States v. Hastings, 918 F.2d 369, 373 (2d Cir. 1990) (holding that the possession of a firearm can be established only if the possession is "knowing"); United States v. King, 254 F.3d 1098, 1104 (D.C. Cir. 2001) ("[I]n cases where a defendant is charged with unlawful possession of something, evidence that he possessed the same or similar things at other times is often quite relevant to his knowledge and intent with regard to the crime charged."). The fact that several of the defendants possessed guns during prior robberies and other crimes on a prior occasions "is certainly relevant to the determination of whether. . . [defendants] knew what [they were] possessing and intended to do so." Cassell, 292 F.3d at 794-95. Similarly, the fact that several of the defendants possessed guns previously makes it more likely that they possessed those guns purposefully, as opposed to by mistake or accident, during the charged crimes. Brown, 961 F.2d at 1042.

    C.    The Proffered Evidence Should Not Be Excluded Under Rule 403

       The proffered "other acts" evidence is highly relevant and probative of the crimes charged in the Indictment, and there is no basis to exclude it under Rule 403. The defendants will not be unfairly prejudiced by the admission of the evidence.

       First, as set forth above, the evidence of defendants' prior uncharged actual and attempted truck and warehouse thefts is inextricably intertwined with the evidence of the defendants' participation in the charged kidnapping, robbery and firearms offenses. Given that these similar acts were part and parcel of the defendants' conduct in the charged crimes, during and immediately prior to the time period of those crimes, it cannot be said that admission of the evidence would cause any unfair prejudice, let alone unfair prejudice that substantially outweighs the probative value of the evidence. See Fed. R. Evid. 403. Moreover, because the evidence is intertwined with the evidence of the charged crimes, it will not unduly expand or increase the length of the trial.

       The proffered evidence of the various defendants' prior arrests and convictions is

-18-

The Honorable Colleen McMahon
April 15, 2008

highly relevant to disproving the defense theories that are expected to be advanced at trial.
Additionally, this evidence is not significantly more sensational than the evidence of the charged
crimes that will be presented at trial.  The defendants are charged with participating in a series of
extremely violent kidnappings and robberies, two of which involved pistol-whippings of the
victims.  Each charge in the Indictment involves the possession of firearms or the active use of
firearms to rob victims of their property at the point of a gun – by intimidation, force, and threats
of violence.  In these circumstances, there is no danger that the admission of the above-described
evidence – including evidence of thefts, burglaries, armed robberies and other instances of
weapons possession – will elicit an emotional or otherwise inappropriate response from the jury.
See Pitre, 960 F.2d at 1120 (admitting evidence of prior narcotics transactions in narcotics case
where other acts evidence "'did not involve conduct any more sensational or disturbing than the
crimes with which [the appellants were] charged'") (quoting United States v. Roldan-Zapata, 916
F.2d 795, 804 (2d Cir. 1990)).

        This remains true even for the evidence described above regarding instances in
which the defendants shot or otherwise wounded victims.  That evidence likewise is not "more
sensational or disturbing" than the charged crimes, because – as the proof at trial will make clear
– the defendants and their co-conspirators brandished firearms during the charged
robbery/kidnappings, and pistol whipped their victims, who sustained head injuries, during two
of the three robbery/kidnappings.  Accordingly, none of the proffered Rule 404(b) evidence
should be excluded under Rule 403.

        Evidence is unfairly prejudicial "only when it tends to have some adverse effect
upon a defendant beyond tending to prove the fact or issue that justified its admission into
evidence."  United States v. Figueroa, 618 F.2d 934, 943 (2d Cir. 1980).  A "[d]efendant must
show some undue prejudice, apart from the prejudice implicit in Rule 404(b) evidence."  United
States v. Vargas, 702 F. Supp. 70, 72-73 (S.D.N.Y. 1988) (emphasis added). Furthermore, the
"fact that evidence may be 'damning' does not render it inadmissible."  Id. (citing United States
v. Cirillo, 468 F.2d 1233, 1240 (2d Cir. 1972)).  Here, beyond providing essential background
evidence and direct proof of the nature, scope, and relationships comprising the charged
robberies and kidnappings, the evidence of prior bad acts committed by the defendants is
admissible under Rules 404(b) and 403 to prove the defendants' knowledge, intent, opportunity,
planning, preparation, and lack of mistake or accident with respect to the charged kidnapping,
robbery and weapons offenses.

        In any event, the Court may minimize any prejudice to the defendant with a
limiting instruction to remind the jury that the defendant is not on trial for any offense other than
the crimes charged.  See United States v. Tussa, 816 F.2d 58, 68 (2d Cir. 1987) (limiting
instruction sufficient to preclude prejudice to defendant); see generally Parker v. Randolph, 442

-19-

The Honorable Colleen McMahon
April 15, 2008

U.S. 62, 75 n.7 (1979) ("The 'rule' – indeed, the premise upon which the system of jury trials functions under the American judicial system – is that juries can be trusted to follow the trial court's instructions."). Accordingly, the Government should be permitted to offer the proffered evidence if the defense presents arguments that relate to the above-referenced issues.

> D.     The Evidence Is Admissible To Explain Accomplice Witness Participation In The Acts

Another basis for admission of the proffered "other acts" evidence described in Parts I.A, I.B, and I.C.2(c) is that an accomplice witness or witnesses who will testify about these acts participated in all of the acts. Thus, it is incumbent on the Government pursuant to United States v. Bagley, 473 U.S. 667 (1985), and Giglio v. United States, 405 U.S. 150 (1972), to apprise the defendant of these acts, and the Government is permitted to elicit the witness's testimony about the acts "to avoid the appearance that it [is] concealing impeachment evidence from the jury." United States v. Coonan, 938 F.2d at 1561; United States v. Louis, 814 F.2d 852, 856 (2d Cir. 1987). Any attempt to "sanitize" the Giglio material will present the jury with an incomplete and inaccurate picture of the conduct at issue, which will only mislead the jury and cause it to misconstrue the witness's role in the charged offenses.

> E.     Impeachment Evidence Under Federal Rule of Evidence 609

Finally, if any of the defendants testify, the Government will seek to cross-examine each defendant as to each of the prior felony convictions listed above specific to that defendant, see supra Part I.B.

Federal Rule of Evidence 609(a) allows for the introduction of convictions punishable by imprisonment in excess of one year to impeach the credibility of the defendant in a criminal case, subject to a prescribed balancing of probative value and prejudicial effect of evidence. The rule specifically provides that any such conviction "shall be admitted if the [trial] court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused." Fed. R. Evid. 609(a)(1).

"Fed. R. Evid. 609(a)(1) vests broad discretion in the trial judge to admit, for purposes of impeachment, evidence that the witness has been convicted within ten years of the time of his testimony of a crime punishable by imprisonment in excess of one year." United States v. Pedroza, 750 F.2d 187, 202 (2d Cir. 1984). However, "[e]vidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the

-20-

The Honorable Colleen McMahon
April 15, 2008

probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b).

The effect of prior convictions upon a juror's evaluation of witness testimony is well-documented. The serious nature of many of the defendants' prior felony convictions may be considered by the jury as indicative of their lack of veracity. Such convictions are probative of a defendant's respect for the law and are directly relevant to an examination of his credibility. See, e.g., United States v. Hourihan, 66 F.3d 458, 464 (2d Cir. 1995) (affirming district court's admission of eight year-old felony conviction). Courts routinely admit evidence of such prior convictions, even when the prior offenses are of the same type as the instant charges. See, e.g., United States v. Smith, 49 F.3d 475, 478 (8th Cir. 1995) (evidence of defendant's prior gun conviction properly used to impeach his credibility in case charging defendant with being a felon in possession of a firearm).

## CONCLUSION

For all of the foregoing reasons, the Government respectfully submits that the "other acts" evidence discussed above should be admissible at trial either as direct evidence of the crimes charged in the Indictment and/or pursuant to Rule 404(b), as appropriate.

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney
Southern District of New York


By:     _____/s/_____
        Nola B. Heller/Michael A. Levy
        Assistant United States Attorneys
        (212) 637-2631/2346


cc:    Michael Keesee, Esq. (Attorney for Plutarco Angulo-Aguirre)
       Paul Rinaldo, Esq. (Attorney for Rafael Rodriguez)
       George Fufidio, Esq. (Attorney for Angel Diaz)
       Michael Burke, Esq. (Attorney for Victor Diaz)
       Clinton W. Calhoun, Esq. (Attorney for Jorge Cedeno)