# Law Office of Sam Braverman

901 Sheridan Avenue

Bronx, New York 10451

Tel 718-293-1977

Fax 718-293-5395

Braverlaw@aol.com

PO Box 127

Tenafly, New Jersey 07670

Tel 201-569-6204

Fax 201-596-2724

May 2, 2008

Hon. Colleen McMahon

United States District Judge

United States Courthouse

500 Pearl Street, Room 640

New York, New York 10007

Re:  United States v. German Cuadrado (Plutarco Angulo Aguirre)

Ind.:  07 Cr. 387 (CM)

BY FAX (to chambers), EMAIL (to counsel) and ECF/CM

Dear Judge McMahon:

Defendant Plutarco Angulo Aguirre submits this letter brief in opposition to the Government's Motion to Admit Evidence Pursuant to FRE 404B. Defendant further submits the attached Motions In Limine.

## 1. THE DEFENDANT'S MOTION TO EXCLUDE PRIOR BAD ACT EVIDENCE OF THE DEFENDANT.

Defendant objects to the Government's proposed evidence and for the reasons stated herein, such application should be denied. The proposed evidence includes uncharged crimes of actual and attempted thefts and prior convictions. These actual and attempted thefts include:

(a) "Angulo-Aguirre's, Victor Diaz's, and one or more other participants in the charged conspiracy's burglary of a warehouse in Blauvelt, New York (the same warehouse from which the truck described in Counts Two and Five of the Indictment departed) on or about July 4, 2006, as well as their repeated attempts to hijack trucks leaving from that warehouse in or about summer 2006;

(b) Angulo-Aguirre's and one or more other participants in the charged conspiracy's theft of a truck containing Sears merchandise in or about July 2006;

(c) Angulo-Aguirre's and one or more other participants in the charged conspiracy's theft of a truck containing marble in or about summer 2006;

(d) Angulo-Aguirre's, Victor Diaz's, and one or more other participants in the charged conspiracy's theft of a truck containing meat products in or about summer 2006;

(e) Angulo-Aguirre's, Victor Diaz's, and one or more other participants in the charged conspiracy's theft of a truck containing Tropicana juice in or about summer 2006;

(f) Angulo-Aguirre's and one or more other participants in the charged conspiracy's attempted theft of a truck in Linden, New Jersey on or about August 6, 2006, after which they were stopped in a van that contained a black ski mask, three sets of gloves, three flashlights, a pry bar, a large plumbers' wrench, channel locks, screwdrivers, pipes, and the top portion of a padlock which appeared to have been broken;

(g) Angulo-Aguirre's, Victor Diaz's, and one or more other participants in the charged conspiracy's theft of a truck from a perfume warehouse on Long Island in or about September or October 2006;

(h) Angulo-Aguirre's, Victor Diaz's, and one or more other participants in the charged conspiracy's theft of several trucks containing designer luggage in or about October 2006. In addition to the specific attempted hijackings described above, the Government also seeks to introduce evidence it claims will show that the defendants, along with one or more participants in the charged conspiracy, often followed trucks around the tri-state area in an effort to track or overtake them. "These multiple attempted thefts and/or hijackings are too numerous to detail separately."

(i) Angulo-Aguirre's, Rodriguez's, and one or more other participants in the charged conspiracy's theft of a truck containing more than $1,000,000 worth of perfume products from a warehouse in Jersey City, New Jersey on or about October 31, 2006"

The Government's proffer of evidence and reasons supporting its admission fails under 404B, 403, 609 and even 104. Further, because the government has made the bald allegation that such evidence is relevant, but fails to state how it is inexoribly interwoven into the trial testimony, or is relevant to the issue on trial, the Government has not even met its burden of coming forward with sufficient reasons. This Court should therefore reject the Government's application and require it to come forward with sufficient reasons before the Defendant is compelled to respond. If denied, then this Court should rule that the Government's proffer fails to satisfy threshhold test of 404B, as well as both the balancing test of 403 and the relevancy test of 104.

## 2. DEFENDANT'S MOTION TO PRECLUDE IMPEACHMENT OF DEFENDANT WITH EVIDENCE OF PRIOR CONVICTIONS

Defendant moves this Court for an order precluding the Government from impeaching him with his prior convictions should he testify at trial. Specifically, the Government seeks to introduce the following:

(a) "On or about April 5, 1995, Angulo-Aguirre was arrested in Dallas, Texas on federal charges of theft from interstate shipment and breaking and entering a carrier facility, in conjunction with an incident in which Angulo-Aguirre and nine other individuals flew from New York to Dallas, conducted advance surveillance on several trucks, and then stole merchandise from an Airborne Express truck and a Federal Express truck. They were apprehended immediately after having burglarized the Federal Express truck. Angulo-Aguirre subsequently pleaded guilty to conspiracy to commit theft from an interstate shipment and to breaking and entering a carrier facility. He was sentenced to six months' imprisonment and three years' supervised release.

(b) On or about January 16, 1997, Angulo-Aguirre was arrested in Miami, Florida for grand larceny in connection with his theft of approximately $200,000 worth of packages from a Federal Express van. He subsequently pleaded *nolo contendere*

to grand theft in the first degree, and was sentenced to five years' probation, $23,500 in restitution, and a fine.

(c) Angulo-Aguirre has several other arrests and 4 convictions that we currently do not intend to introduce, but as to which we may seek to offer evidence should they become relevant. These include: (1) an arrest on or about May 28, 1992 for criminal possession of stolen property, possession of burglar tools, resisting arrest, and criminal mischief, as to which he pleaded guilty to burglary in the third degree, illegal entry with intent to commit a crime and was sentenced to five years' probation and a fine; (2) an arrest on about May 7, 1996, along with Victor Diaz, for conspiracy to commit burglary and possession of marijuana, which charges ultimately were dismissed; and (3) an arrest on or about September 3, 1996 for illegal possession of a vehicle identification number, criminal possession of stolen property, and unauthorized use of a vehicle, as to which no disposition is reported."

Federal Rule of Evidence 609 provides, inter alia, that "evidence that an accused has been convicted of ... a crime [punishable by death or imprisonment in excess of one year] shall be admitted if the court determines that the probative value of admitting this evidence outweighs the prejudicial effect of the accused." Fed. Rule Evid. 609 (a)(l). The Rule also provides that "evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment." Fed. Rule Evid. 609 (a)(2). Under Rule 609 (a)(l) "the prosecution must show that the probative value of a prior conviction outweighs the prejudice to the defendant." United States v. Lipscomb, 702 F.2d 1049 (D.C. Cir. 1983). In this case, the Government cannot make the requisite showing with respect to Defendant's prior convictions.

In United States v. Fearwell, 595 F.2d 771 (D.C. Cir. 1978), the D.C. Circuit admonished that, "Rule 609 (a)(2) is to be construed narrowly; it is not carte blanche for admission on an undifferentiated basis of all previous convictions for purposes of impeachment; rather, precisely because it involves no discretion on the part of the trial court in the sense that all crimes meeting its stipulation of dishonesty or false statement must be used for impeachment purposes, Rule 609

(a)(2) must be confined ... to a 'narrow subset of crimes' — those that bear directly upon the accused's propensity to testify truthfully." Id., at 777, citing United States v. Smith, 551 F.2d 348 (D.C. Cir. 1976) (emphasis in original). Further, even felony theft has been held not to trigger 602(a)(2). Howard v Gonzalez, 658 F2d 352 (5th Cir, 1981). In Defendant's case, his convictions have no bearing upon his propensity to testify truthfully.

In Smith, the D.C. Circuit explained that "[b]y the phrase 'dishonesty and false statement' the [Congressional Conference Committee] means crimes such as perjury or subornation of perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other offense in the nature of crimen falsi, the commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully." 551 F.2d at 362, citing H.R. Conf. Rep. No. 9301597, 93d Congo Sess. 9, reprinted in [1974] U.S. Code Congo & Admin. News, pp. 7098, 7103. Further, the Smith court noted that even an offense that does not per se bear on credibility may be used to impeach if "the prosecutor has first demonstrated to the court the underlying facts which warrant the dishonesty or false statement description." Id., at 364. It is the Government's burden to "produc[e] fact[s] which demonstrat[e] that the particular conviction involved fraud or deceit." United States v. Glenn, 667 F.2d 1269,1273 (9th Cir. 1982), citing United States v. Smith, 551 F.2d at 364.

In Defendant's case the Government has produced no information suggesting that the offenses for which he has been convicted involved fraud or deceit. The Government bears the burden of proof in establishing the admissibility of a prior conviction. See, e.g., United States v. Crawford, 613 F.2d 1045, 1053 (D.C. Cir. 1979). This Court should not allow the Government to impeach Defendant with his prior convictions absent an "inquiry into the nature and circumstances" of those convictions. Id., at 1053.

WHEREFORE, for all the foregoing reasons, and any others which may appear to this Court in a full hearing on this matter, Defendant respectfully requests that the Government not be permitted to impeach him under Federal Rule of Evidence 609 with his prior convictions. Further, such evidence must be considered with the balancing test mandated by FRE 403.

3. DEFENDANT'S MOTION *IN LIMINE* TO PRECLUDE ADMISSION OF CO-CONSPIRATOR HEARSAY STATEMENTS

Defendant moves this Court for an order precluding admission at trial of any out-of-court statements purportedly made by any indicted or unindicted co-conspirators which directly or indirectly referred to Defendant, or which otherwise may be used to incriminate Defendant. In support of this motion, Defendant submits the following.

Defendant anticipates that the Government will attempt to offer into evidence out-of-court statements made by numerous indicted or unindicted co-conspirators at trial and that some or all of those out-of-court statements either refer to Defendant, directly or indirectly, or otherwise would be used to incriminate Defendant.

Pursuant to Rule 801(d)(2)(E) of the Federal Rules of Evidence, statements that would otherwise be hearsay are admissible if they are "by a co-conspirator of a party during the course and in furtherance of the conspiracy." For a declaration by a co-conspirator to be admissible against a defendant under this subsection of Rule 801, the Government must establish by a preponderance of the evidence the following: (1) that a conspiracy existed, (2) that the defendant and the declarant were members of that conspiracy, and (3) that the statement was made during the course and in furtherance of the conspiracy. See United States v. Beckham, 968 F.2d 47,5152 (D.C. Cir. 1992).

In the present case, any out-of-court statements by co-conspirators that the Government seeks to admit at trial should be carefully reviewed by the Court before their admission, and should be admitted only if the Government satisfies the burden set forth above. In order to minimize the prejudicial impact of such statements, the Court should make a determination as to their admissibility before the statements are presented to the jury. If this Court allows the Government to present the evidence with the hope that the Government will satisfy and the Government fails to satisfy its burden or fails to make the requisite connection, the jury will have heard the damaging statements. Even if the Court gives a curative instruction, the jury will have difficulty not considering them in their deliberations. A mistrial will likely result and this will needlessly waste the Court's resources. Defendant submits that it would be more efficient to require the Government to meet its burden pre-trial.

Further, many of the out-of-court statements present a *Bruton* issue in that the statements of one co-defendant may implicate the guilt of the defendant, but as the co-defendant may not testify (if he is one of the co-defendants on trial in the instant matter). The Government must disclose all these statements prior to trial so that the relevant severance or motion to strike can be made. United States v. Williams, No. 05-6036-cr (2d Cir. October 23, 2007)

WHEREFORE, Defendant respectfully requests that this Court rule that any out-of-court statements by co-conspirators are inadmissible at trial in this case unless the Government has satisfied its burden of proof that the hearsay exception under Rule 801(d)(2)(E) applies to such statements. Furthermore, Defendant requests that this Court makes such a determination as to admissibility of such out-of-court statements before the statements are actually presented to the jury.

## 4. DEFENDANT'S MOTION FOR INDIVIDUALIZEDVOIR DIRE BY COUNSEL

Defendant moves the Court for an Order permitting defense counsel to *voir dire* the venire panel individually.

Individualized *voir dire* by counsel is essential so that the defendant can effectively and adequately exercise his peremptory challenges in selecting jurors.  In light of Batson v. Kentucky, 476 U.S. 79 (1986), and its progeny, including Georgia v. McCollum, 505 U.S. 42 (1992), and J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127 (1994), parties (including an accused) cannot exercise their peremptory challenges based on their personal race or gender biases or prejudices.

Case law now holds that where there is a prima facie case of racial discrimination in the exercise of a party's peremptory challenges, that party "must articulate a racially neutral explanation for the peremptory challenge."  McCollum, 505 U.S. at 59; see Batson, 476 U.S. at 98.  Similarly, if there is a prima facie case of gender discrimination, counsel must offer a gender-neutral, non-pretextual explanation for the peremptory challenge.  J.E.B., 511 U.S. at 145.  To enable the accused to exercise his peremptory challenges intelligently and adequately,

and to ensure that they can be supported by a race and gender neutral explanation, individualized *voir dire* is essential.

The Supreme Court's decision in <u>J.E.B.</u> declared:

> If conducted properly, <u>voir</u> <u>dire</u> can inform litigants about potential jurors, making reliance upon stereotypical and pejorative notions about a particular gender or race both unnecessary and unwise. <u>Voir</u> <u>dire</u> provides a means of discovering actual or implied bias and a firmer basis upon which the parties may exercise their peremptory challenges intelligently, <u>See</u>, <u>e.g.</u>, <u>Nebraska Press Assn. v. Stuart</u>, 427 U.S. 539, 602 . . . (1976) (Brennan, J., concurring in the judgement) (<u>voir</u> <u>dire</u> "facilitate[s] intelligent exercise or peremptory challenges and [helps] uncover factors that would dictate disqualification for cause"); <u>United States v. Witt</u>, 718 F.2d 1494, 1497 (CA10 1983) ("Without an adequate foundation [laid by <u>voir</u> <u>dire</u>], counsel cannot exercise sensitive and intelligent peremptory challenges").

511 U.S. at 143 (brackets in original). Because, as Justice O'Connor pointed out in her concurring opinion in <u>J.E.B.</u>, litigants can no longer simply rely on their intuition in exercising peremptory challenges, 511 U.S. at 149 (O'Connor, J., concurring), fundamental fairness dictates that defense counsel be given an opportunity to *voir dire* the venire panel individually to ensure that an impartial jury is selected consistent with the dictates of <u>Batson</u> and its progeny.

For the foregoing reasons, the Court should enter an Order permitting defense counsel to *voir dire* the venire panel individually so that the accused can effectively and adequately exercise his peremptory challenges in selecting jurors.

5. DEFENDANT'S MOTION FOR IMMEDIATE DISCLOSURE OF <u>BRADY</u> MATERIAL

Defendant moves this Court for immediate disclosure of <u>Brady</u> material. Defendant requests the following exculpatory evidence and asks that the information requested be produced immediately to the defense.

1.  Any evidence (including unrecorded oral statements) in the possession or knowledge of the government, the existence of which is known, or by the exercise of due diligence could become known to the government, tending to show that any individuals who may be called as government witnesses have given conflicting or contradictory statements regarding their involvement in this case, the involvement of Defendant, and/or the involvement of any alleged associate, accomplice, or co-conspirator.

2.  Any and all evidence in the possession of the government, the existence of which is known, or by the exercise of due diligence may become known to the government, which would tend to show that any informant, co-conspirator (indicted or unindicted), aider and abettor, associate, or other individual alleged by the government to have been in a conspiracy with Defendant, transported, produced, distributed, sold, transferred, delivered or possessed any illegal narcotic substance.

3.  The full record of any arrests, pending cases, and criminal convictions of any witness whom the government intends to call at trial, including any informants, accomplices, witnesses, or unindicted co-conspirators.

4.  Any evidence or records of any suspected wrongdoing or ongoing investigations in this or any other jurisdiction (state or federal) of any witness whom the government intends to or contemplates calling at trial.

5.  A full and complete statement of all promises (oral or recorded), considerations, rewards, or inducements made by the government, its prosecutors, agents or agencies to induce or encourage any individual's testimony, cooperation or provision of information, wherein the government has agreed, either with the individual, their counsel, agent or representative, to any of the following:

a)  not to prosecute said person for any crime or crimes;

b)  not to prosecute a third party for any crime or crimes where the reason for not prosecuting the third party is a consideration to the person;

c)  to provide a formal grant of statutory immunity, or to provide an informal assurance that the person will not be prosecuted in connection with any testimony, cooperation, or information given;

d)  to recommend leniency or a particular sentence for any crime or crimes for which the person stands convicted or is expected to be convicted;

e)  to comply with any prior agreements although said witness may have previously violated a part of their agreement;

f)  to recommend or not oppose a reduction of the offense level of the person under the United States Sentencing Guidelines for acceptance of responsibility;

g)  to recommend to the sentencing authority under the United States Sentencing Guidelines a downward departure from the guidelines if that person provides substantial assistance to authorities;

h)  to recommend or not oppose any downward departures or offense level reductions for the person under the United States Sentencing Guidelines;

i)  to seal any plea or plea agreement of that person;

j)  to provide favorable treatment or consideration, including but not limited to, money, expenses, subsistence, a job, a new location, a new start, etc. to the person or to friends or relatives of the person in return for that person's testimony, cooperation, or provision of information;

k)  to make any beneficial recommendation, regarding the person to any state or federal agency;

l)  to cooperate with any state law enforcement agency and that agency's agreement not to prosecute said person for any crime or crimes prohibited by state law; or

m)  to make any other recommendation of benefit, or give any other consideration to the person or friends or relatives of said person;

n)  to provide a statement to, or speak with, any law enforcement agency, prosecution official or court (state or federal) concerning the witness' assistance or cooperation.

6. Notice, including date, amount and method (cash or check) and purpose of any monies paid to any witness, operative, or informant of the government in return for information, their services or as a reward and/or for the purported payment of expenses and/or for any purported obligation of any such witness or informant.

7. Any writings, canceled checks, receipts, vouchers or other documents generated as a result of any promises, statements, agreements, understandings or arrangements by which any of the matters listed in paragraphs 5 and 6 were provided to the person, or by which records were kept of such by the government.

8. Any evidence in the possession of the government that would tend to prove or reveal a bias or motive of any witness that the government intends or contemplates calling at trial.

9. Any and all threats of prosecution or any statements regarding the magnitude of penal liability made to any witness that the government intends or contemplates calling at trial, or any witness called before a federal grand jury, by any agent or employee of the federal government or by an state law enforcement or prosecutorial agency working or cooperating with the government.

10. A list of all persons (and their counsel) who were asked by the government or its representatives whether they or their clients would and/or could implicate the defendant in any criminal wrongdoing.

11. Any evidence of past or present drug or alcoholic ingestion or dependency by any witness whom the government intends or contemplates calling at trial. If any medical, hospital, or law enforcement records exist, which disclose such ingestion or dependency or the treatment thereof, it is requested that the source and location of such records be provided and/or disclosed. If no such records exist, but others have witnessed such ingestion or dependency, it is requested that the names and addresses of such persons be disclosed.

12. Any evidence of psychiatric hospitalization, psychiatric treatment or mental disease or defect or physical disorder of any witness whom the government intends or contemplates calling at trial. If any medical or hospital records exist, it is requested that the source and locations of such records be provided and/or disclosed. If no such records exist, but others have observed such disease, defect or disorder, it is requested that the names and addresses of such persons be disclosed.

13. Any evidence of polygraph or "lie-detector" tests administered to any witness whom the government intends or contemplates calling at trial, and the results of any such tests, including any evidence regarding the refusal of such persons to take any requested polygraph or "lie-detector" tests.

14. Any evidence that may be used to impeach a witness at the trial in this case, particularly but not exclusively, inconsistent statements of a witness or between witnesses.

In Brady v. Maryland, 373 U.S. 83 (1963), the Supreme Court held that due process forbids a prosecutor from suppressing "evidence favorable to an accused upon request where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id., at 87. See Giglio v. United States, 405 U.S. 150 (1972); United States v. McCrane, 527 F.2d 906 (3d Cir. 1975), aff'd after remand, 547 F.2d 205 (1976). The Supreme Court has also emphasized that impeachment evidence, as well as exculpatory evidence, falls within the Brady rule. United States v. Bagley, 473 U.S. 669, 678 (1985). Such evidence, if disclosed and used effectively, may make the difference between conviction and acquittal. See Napue v. Illinois, 360 U.S. 264 (1959) ("The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend."). In acknowledging that the prosecution has a duty to disclose any favorable evidence that could be used at trial, it is frequently overlooked that the prosecution also has a duty to disclose any favorable evidence that could be used "in obtaining further evidence." Giles v. Maryland, 386 U.S. 66, 74 (1967). Additionally, favorable evidence need not be competent evidence or evidence admissible at trial. United States v. Gleason, 265 F. Supp. 850, 886 (S.D.N.Y. 1967); Sellers v. Estelle, 651 F.2d 1074,1077 n.6 (5th Cir. 1981)(evidence suppressed was material to the preparation of petitioner's defense, regardless whether it was intended to be admitted into evidence).

Under United States v. Rodriguez, No. 05-3069-cr (2d Cir. July 24, 2007)(**Leval**, Cabranes, CJJ, Rakoff, DJ)."[t]he obligation to disclose information covered by [*Brady/Giglio*] exists without regard to whether that information has been recorded in tangible form." Therefore, if a witness has *ever* said that the defendant was either not guilty or guilty of only lesser offense, or

was not part of any part of the conspiracy, even if such statement or assertion was not reduced to writing, such information must be disclosed to the defense.

Further, the Government may not hide such evidence even if it believe such evidence to be incredible, or it has been since disavowed by the speaker, or investigated and disproved by the Government. In <u>Disimone v. Phillips</u>, Docket No. 05-6893-pr (2d Cir. Aug. 22, 2006), the Circuit held that the prosecutor violated his obligations under Brady rejecting the Government's claim that witnesses statement was not exculpatory because it did not find him credible. The prosecutor explained to the trial judge, for instance, that he was not required to turn over the statement because "the information contained in that affidavit was thoroughly investigated by my office and negated on several counts . . . [as] basically a lie." As a result, the Government claimed, the witness' statement did not qualify as <u>Brady</u> material. The Circuit flatly rejected it: "If there were any questions about the reliability of the exculpatory information, it was the prerogative of the defendant and his counsel -- and not of the prosecution -- to exercise judgment in determining whether the defendant should make use of it." Judge Calabresi then approvingly quotes a district court opinion stating the same: "If the evidence is favorable to the accused, then it must be disclosed, <u>even if the prosecution believes the evidence is not thoroughly reliable</u>." <u>Id.</u> (emphasis added). "To allow otherwise," the Circuit concluded, "would be to appoint the fox as henhouse guard." <u>Id.</u>

The Supreme Court has never precisely pinpointed the time at which the disclosure under <u>Brady</u> must be made. It is abundantly clear, however, that disclosure by the government must be made at such a time as to allow the defense to use favorable material effectively in the <u>preparation</u> and presentation of its case, even if satisfaction of these criteria requires pre-trial disclosure. See, <u>United States v. Pollock</u>, 534 F.2d 964,973 (D.C. 1976). <u>Accord United States v. Presser</u>, 844 F.2d 1275, 1283 (6th Cir. 1988); <u>see United States v. Starusko</u>, 729 F.2d 256,261 (3d Cir. 1984) (Noting that <u>Brady</u> information which will require defense investigation or more extensive defense preparation should be disclosed at an early stage of the case.); <u>see, e.g.,</u> <u>United States v. Recognition Equipment, Inc.</u>, 711 F. Supp. 1, 14 (D.D.C. 1989) (Ordering immediate disclosure of evidence regarding criminal records and other impeachment information for government witnesses, statements to the effect that any of the defendants were not members of the charged conspiracy, evidence supporting the defendants' defenses). Manifestly a more

lenient disclosure burden on the government would drain <u>Brady</u> of all vitality. <u>United States v. Elmore</u>, 423 F.2d 775,779 (5th Cir. 1970).

The disclosures requested herein should be made immediately so that appropriate defense preparation can be made. To make effective use of the information requested herein, it is essential to test the reliability of this information through thoughtful consideration and thorough investigation. This cannot be accomplished if disclosure is delayed.

It would be fundamentally unfair for Defendant to receive this information shortly before or after the commencement of trial. If the Court adopts this proposal, Defendant will not be able to present an adequate opening statement. The case against Defendant is based almost entirely on the anticipated testimony of criminals. Thus, Defendant will be profoundly prejudiced unless he discovers this information with sufficient time to consider, investigate and test the reliability of the evidence against him.

Defendant is entitled to make an opening statement. This is true whether or not he puts on evidence. <u>Wright v. United States</u>, 508 A.2d 915,919 (D.C. 1986). A defense attorney's opening statement, however, must remain "within the bounds of propriety and good faith." <u>Hallinan v. United States</u>, 182 F.2d 880, 885 (9th Cir. 1950). It would be unethical, therefore, for counsel to simply predict during opening statement what the evidence will show.

Moreover, jury studies have shown that as many as 80 to 90 percent of all jurors have reached their ultimate verdict during or immediately after opening statements. <u>See</u> Alfred S. Julien, <u>Opening Statements</u> §1.01, at 2 (Supp. 1996) (Jurymen ... have been prone to say that once the opening statements were made there was nothing left to the case.) and Donald E. Vinson, <u>Jury Trials: The Psychology of Winning Strategy</u> 171 (1986) ("[A]s many as 80 to 90 percent of all jurors have reached their ultimate verdict during or immediately after opening statements."); <u>Symposium: Communicating with Juries: Timing of Opinion Formation by Jurors in Civil Cases: An Empirical Examination</u>, 67 Tenn. L. Rev. 627 (2000). Therefore, it is critical that Defendant be given a full opportunity to assist the jurors in understanding the evidence presented. <u>See Best v. District of Columbia</u>, 291 U.S. 411, 415 (1934) (the purpose of an opening statement is to

assist the jury in understanding the evidence to be presented); accord United States v. Dinitz, 424 U.S. 600, 612 (1976) (Burger, C.J. concurring) (purpose of opening statement is "to state what evidence will be presented, to make is easier for the jurors to understand what is to follow and to relate parts of the evidence and testimony to the whole"). Given the nature of the anticipated evidence against Defendant and the expected duration of his trial, failure of the government to provide such information immediately will deny him the opportunity to adequately prepare for this case, which constitutes a denial of due process and effective assistance of counsel.

Accordingly, in order to afford the defendant a meaningful opportunity to contest the charges against him by confronting his accusers with the effective assistance of counsel in a fashion which will not jeopardize his standing before the jury, Defendant requests that the government be ordered to disclose all Brady material to defendant's counsel immediately.

Defendant further requests the following exculpatory evidence concerning the government's use of informant's, operatives and cooperating individuals who participated in any way or who are material to any of the events charged in the indictment. Defendant requests that the identities of any such class of person and the information requested below be produced immediately to the defense.

1. Whether such informant, witness, confidential source or cooperating individual was suspected, apprehended or convicted of any crime(s) at any time during which he/she agreed to gather information on behalf of the United States or any other government agency.

2. What crime(s) or other breaches or law (including jurisdiction and case number) such informant, witness, confidential source or cooperating individual had committed or was suspected of having committed at any time during which he/she agreed to gather information on behalf of the United States or any other governmental agency.

3. Whether any potential or actual criminal charges against any informant, witness, confidential source or cooperating individual were abandoned, altered, or otherwise disposed of upon his/her agreement to gather information on behalf of the United States or any other governmental agency.

4. What financial arrangements existed or exist between any informant, witness, confidential source or cooperating individual and the agencies of the United States, the Southern District of New York (or any other District), the State of New York (or any other state), including but not limited to:

    (a) Any sums of money paid to any informant, witness, confidential source or cooperating individual; and

    (b) Copies of any vouchers for payment to any informant, confidential source, cooperating individual or witness.

5. The names, addresses, and criminal records of any informant, witness, confidential source, or cooperating individual to be called as a witness for the government.

6. The substance of any plea bargain(s) entered into by any agency of the United States, the Southern District of New York (or any other District), the State of New York (or any other state), and the authority for any such plea bargains.

7. The substance of any formal or informal agreements made by the United States, the Southern District of New York (or any other District), the State of New York (or any other state), or other jurisdictions with any informant, witness, confidential source or cooperating individual not to charge crimes or to enter into a plea agreement and the authority for any such agreements.

8. Information tending to show bias and/or prejudice on the part of any informant, witness, confidential source or cooperating individual whom the government intends to call at trial.

9. Information tending to show that any informant, confidential source or cooperating individual has made contradictory or inconsistent statements relative to this case, to any related case, or to the defendant.

10. Information tending to show that any informant, witness, confidential source or cooperating individual suffers from any material defect in perception, memory, veracity or articulation.

11. The nature of any past or present relationship between any informant, confidential source or cooperating individual utilized in this case and the FBI, DEA, U.S. Customs or any other federal agency, any state law enforcement agency, including but not limited to the date of such relationship and whether a continuing relationship exists.

12. The exact date, time and place that any federal or state agency, and the name of the agency or agencies engaged any informant.

13. Whether any informant utilized by the government has taken a polygraph examination regarding the allegations which are the subject of this indictment, and if so, as to each such person:

(a) The name of the person;

(b) The date, time and place or the examination or examinations;

(c) How many tests were given;

(d) How many tests the person has passed or failed to show deception;

(e) How many tests the person has failed or showed deception;

(f) The names and credentials of the operators;

(g) A copy of the polygraph chart and the examiner's notes for independent evaluation by the defense;

(h) A copy of the pretest questionnaire and answers;

(i) The purpose for which the person was polygraphed.

14. Whether any informant is or was at the time of the events alleged in the indictment an abuser or alcohol or controlled substances, and if so, then a description of:

(a) The substance;

(b) The amount used;

(c) The extent of addiction;

(d) Current status with regard to alcohol or drug abuse;

(e) Any and all psychological or psychiatric reports concerning any informants' alcohol or drug abuse problems.

15. Whether any informants utilized by the government in this case have ever had or required any psychiatric or psychological treatment and, if so, then a description of:

(a) When and where the treatment occurred;

(b) The exact nature of the condition treated;

(c) Whether the informant has ever been admitted to a hospital and, if so, when and where, the diagnosis and prognosis; and

(d) Whether the informant is currently receiving treatment and, if so, the nature of such treatment and the nature of the condition being treated.

16. All evidence regarding any witness the government intends to call who is listed as an informant for any agency of the United States government, or any agency of state government, including but not limited to:

    (a) The exact nature of the relationship between the witness and the agency;

    (b) The date, time and circumstances that such relationship came into existence;

    (c) Whether such a relationship was entered into voluntarily by the witness, or as a result of an agreement to forbear prosecution or for sentencing leniency;

    (d) Any other reason a relationship was entered into other than a voluntary basis by the witness;

    (e) The exact reason the relationship was established;

    (f) The exact amount of money paid to any informant, when and by what method.

17. A full and complete statement of all promises, considerations, rewards, or inducements made by the government, its prosecutors, agents or agencies to induce or encourage any witness the government intends to call at trial and who is listed as an informant for any agency of the United States government, wherein the government has agreed to any of the following (including the equivalent under state law):

    (a) Not to prosecute said person for any crime or crimes;

    (b) Not to prosecute a third party for any crime or crimes where the reason for not prosecuting the third party is a consideration to the person;

    (c) To provide a formal grant of statutory immunity, or to provide an informal assurance that the person will not be prosecuted in connection with any testimony, cooperation, or information given;

    (d) To recommend leniency or a particular sentence for any crime or crimes for which the person stands convicted or is expected to be convicted;

    (e) To comply with any prior agreements although said witness may have previously violated a part of their agreement;

    (f) To recommend or not oppose a reduction of the offense level of the person under the United States Sentencing Guidelines for acceptance of responsibility;

    (g) To recommend to the sentencing authority under the United States Sentencing Guidelines a downward departure from the guidelines if that person provides substantial assistance to authorities;

(h) To recommend or not oppose any downward departures or offense level reductions for the person under the United States Sentencing Guidelines;

(i) To seal any plea or plea agreement of that person;

(j) To provide favorable treatment or consideration, including but not limited to, money, expenses, subsistence, a job, a new location, a new start, etc. to the person or to friends or relatives of the person in return for that person's testimony, cooperation, or provision of information;

(k) To make any beneficial recommendation, regarding the person to any state or federal agency;

(l) To cooperate with any state law enforcement agency and that agency's agreement not to prosecute said person for any crime or crimes prohibited by state law; or

(m) To make any other recommendation of benefit, or give any other consideration to the person or friends or relatives of said person.

(n) To provide a statement to, or speak with, any law enforcement agency, prosecution official or court concerning the witness' assistance or cooperation.

18. With respect to any informants, all materials contained in the "main files" of the FBI, DEA or other governmental agencies, including but not limited to:

(a) Correspondence requesting approval to initiate suitability and pertinence inquiry;

(b) Indices checks;

(c) Correspondence requesting authority to operate following suitability and pertinence inquiry;

(d) NCIC inquiry and response;

(e) Identification Division Report;

(f) Local arrest records;

(g) Credit checks;

(h) FD 302s, DEA 6s or equivalent government agency documents in which the identity of the informant has been revealed;

(i) FD 209s or equivalent government agency documents containing administrative information that may tend to identify the informant;

(j) Payment request memos;

(k) Requests to FBI HQ for additional payment authority;

(l)  Requests to FBI HQ for lump sum payment authority;

(m) All other administrative type correspondence and any correspondence that identifies or tends to identify the informant.

19. With respect to any informants utilized in this case, any and all information contained in any file designated by the FBI or DEA as "subfile" including, but not limited to FD 302s and DEA 6s in which the identity of the informant is concealed, inserts that conceal the identity of the informant, and annual letters.

20. Inasmuch as the indictment alleges criminal acts beginning in 2005, the accused requests a copy of any supervisor's informant file review log or its equivalent, with respect to any informant utilized in the investigation of this case.

21. Copies of all memoranda requesting payment for services and/or expenses to any informant, which memoranda contain a justification for the request for payment.

22. All approvals for payment for services and/or expenses to an informant utilized in the investigation of this case.

23. Copies of any and all teletypes or faxes furnished to the FBI HQ, DEA HQ or any other governmental agency requesting lump-sum payments to any informants and the approval for such payments with respect to any informant utilized in the investigation of this case.

24. Whether any informant has testified or is expected to testify in connection with this case, and any proposal to pay the informant for such testimony or pay the purported expenses of the informant, and the nature of any discussions with the U.S. Attorney's Office.

25. Any and all receipts obtained from any informants utilized in the investigation of this case or, if no receipts exist, the written justification for not obtaining a receipt.

26. If the obtaining of a receipt was not possible, the memorandum setting forth the complete circumstances of payment.

27. Whether any informants utilized in the investigation of this case were offered any rewards by any private individuals and, if so, the approval and all documentation relating to such reward(s).

28. Copies of all federal tax returns of any informant utilized in this case filed during the course of the investigation and up until the time of trial.

29. All receipts signed by prospective government witnesses or informants utilized in this case.

30. Any and all representations made to informants concerning the potential of reward or payment for information including fees or payments, which may be earned from, forfeited assets or collected fines.

31. Whether any informant utilized in this case has previously been used as an informant and/or a witness by any federal or state agency or in any federal or state prosecution and, if so, state:

    (a) The agency or agencies for which the individual was an informant;

    (b) The dates when such a relationship existed and the length of such relationship;

    (c) The dates when and places where the individual testified as a witness;

    (d) The exact payments the individual received for services and expenses.

32. Any and all documentation detailing or setting forth the accomplishments by informants utilized in this case.

33. The date(s) on which all persons who were informants utilized in this case were "opened" or "closed" as informants.

34. Whether any persons are currently opened as informants.

35. Copies of all instructions required to be given any informant used on a continuing basis, any informant authorized to associate in activities, participation in which otherwise would be involvement in unauthorized past or continuing criminal activities, and any informant or confidential source providing substantial operational assistance in an undercover operation.

36. A copy of the written record in any informant's or confidential source's file of the instructions given.

37. Any authorization or approval for any informant or confidential source to engage in any activity that would constitute a crime under state or federal law if engaged in by a private person, and the written findings by supervisory officials that such conduct is necessary to obtain information or evidence and that the need outweighs the seriousness of the conduct involved.

38. Copies of pretrial services reports on any informant or confidential source prepared for any informant or confidential source that have been arrested for a federal offense.

39. Copies of presentence reports prepared on any informant or confidential source for any federal conviction or plea of guilty.

In order to defend properly this case, it is imperative that the accused be furnished with the names, addresses and present locations of each and every informant and cooperating witness. Being a participant in or a witness to any charged or uncharged misconduct qualifies the informant as a material witness. The Supreme Court in <u>Roviaro v. United States</u>, 353 U.S. 53 (1957), in balancing an accused's right to fundamental fairness guaranteed by the United States Constitution against the government's interest in withholding from disclosure the identity of an informant, recognized what has become known as the "informer's privilege":

> What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of the law. . . .The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation.

<u>Id</u>. at 60 (citations omitted). Although the Supreme Court recognized such a privilege, it expressly pointed out limitations on its applicability. One such limitation "arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or the contents of his or her communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." <u>Id</u>. at 60-61; <u>accord</u>, <u>United States v. Eniola</u>, 893 F.2d 383, 388 (D.C. Cir. 1990); <u>McLawhorn v. State of North Carolina</u>, 484 F.2d 1,4-5 (4th Cir. 1973).

The only reason for late disclosure in this case is to provide the government with an insurmountable strategic advantage at trial. This is not an appropriate basis for withholding this information; therefore, an Order directing immediate production is warranted.

## 6. DEFENDANT JOINS THE CO-DEFENDANTS' MOTIONS IN LIMINE AND THE ANSWERS IN OPPOSITION TO THE GOVERNMENT'S MOTION PURSUANT TO 404B

The defendant joins in the motions in limine of the co-defendants to the extent that they are consistent with the defendant's postion at trial. Defendant also joins the in the answers in

opposition to the government's motion pursuant to 404B to the extent that they are consistent with the defendant's postion at trial.

Respectfully submitted,

_____
Samuel Michael Braverman

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA,**

|  |  |  |
|---|---|---|
| **Plaintiff,** | ) | |
| | ) | |
| | ) | **Dkt No. 07 Cr 387 (CM)** |
| **v.** | ) | |
| | ) | |
| Plutarco Angulo Aguirre, | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

Upon consideration of Defendant's Motions *In Limine*, it is this _____ day of May, 2008, hereby

**ORDERED**, that Defendant's motions are granted.

_____
Hon. Colleen McMahon
UNITED STATES DISTRICT JUDGE

Copies to:

Paul Rinaldo, Esq.

George Fufidio, Esq.

Clinton Calhoun, Esq.

Micahel Burke, Esq.

AUSA Nola Heller