

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*

*One Saint Andrew's Plaza*
*New York, New York  10007*

May 6, 2008

**BY FACSIMILE AND HAND DELIVERY**

The Honorable Colleen McMahon
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street, Room 640
New York, New York  10007

        Re:    *United States v. Plutarco Angulo-Aguirre et al.,*
             **S4 07 Cr. 387 (CM)**

Dear Judge McMahon:

      The Government respectfully moves *in limine* to preclude the defendants from: (i) cross-examining two victim-witnesses about the results of a polygraph examination; (ii) cross-examining another victim-witness about a prior armed robbery conviction; and (iii) cross-examining a law enforcement witness about a prior adverse credibility finding.

**I.**      **The Defense Should Be Precluded From Cross-Examining Two Victim-Witnesses About The Results Of A Polygraph Examination.**

      On September 13, 2006, several of the defendants in this case hijacked a truck and stole its cargo of perfume.  The truck driver ("Victim-1") and his helper ("Victim-2") were robbed and kidnapped in that incident.  Law enforcement officials subsequently interviewed Victim-1 and Victim-2 several times about the robbery and kidnapping.  In addition, on October 19, 2006, Victim-1 and Victim-2 each voluntarily submitted to a polygraph examination conducted by the Federal Bureau of Investigation ("FBI").  During that examination, Victim-1 and Victim-2 were each asked the following two questions:  "Did you plan with anyone to steal that perfume?" and "Do you know for sure who stole that perfume?"  Victim-1 and Victim-2 each answered "no" to both questions.  The polygraph examiner concluded that Victim-1's and Victim-2's physiological responses while answering the foregoing questions were "indicative of deception."

The Honorable Colleen McMahon | Page 2
May 6, 2008

      The Government respectfully moves to preclude the defense from cross-examining Victim-1 and Victim-2 about the results of this polygraph examination. Apart from the polygraph examiner's conclusions, there is no other indication that the Victims' answers to the two questions – *i.e.*, their denials of any involvement in the robbery – were false. In fact, at trial, the Government will present the testimony of several participants in the robbery, each of whom will confirm that Victim-1 and Victim-2 were merely victims, not co-conspirators or participants. Accordingly, the Government submits that the jury's task will not be aided – and the Government will be severely prejudiced – by cross-examination of Victim-1 and Victim-2 about the polygraph examiner's findings.

      Polygraph evidence is sufficiently unreliable that it is generally deemed inadmissible pursuant to Rules 702 (Testimony by Experts) and 403 (Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time) of the Federal Rules of Evidence. While the Second Circuit has yet to confront whether adoption of the Federal Rules of Evidence has softened the complete ban on polygraph evidence that previously existed, *see United States* v. *Kwong*, 69 F.3d 663, 668-669 (2d Cir. 1995) (noting blanket inadmissibility of polygraph evidence prior to adoption of Federal Rules and declining to answer question of "the validity of polygraph evidence under Rule 702"), both the Second Circuit and its district courts have nonetheless consistently expressed serious doubt as to the reliability of such evidence, *see, e.g.*, *United States* v. *Duverge Perez*, 295 F.3d 249, 253-54 (2d Cir. 2002) (finding no abuse of discretion from the district court's refusal to admit polygraph evidence in connection with the defendant's sentencing); *United States* v. *Ruggiero*, 100 F.3d 284, 292 (2d Cir. 1996) (dismissing the significance of polygraph results that might corroborate a defendant's testimony because of their "questionable accuracy"); *United States* v. *Canter*, 338 F. Supp. 2d 460, 463-65 (S.D.N.Y. 2004) (denying defendant opportunity to present evidence of polygraph examination); *United States* v. *D'Angelo*, 02 Cr. 399 (JG), 2004 WL 315237, *27 (E.D.N.Y. Feb. 18, 2004) ("Polygraphs are insufficiently reliable even for use as impeachment, let alone as affirmative evidence."); *Monsanto* v. *United States*, Nos. 97 Civ. 4700, S 87 Cr. 555, 2000 WL 1206744, *4 (S.D.N.Y. Aug. 24, 2000) (denying use of polygraph results for impeachment because "polygraph examinations are considered unreliable and are inadmissible in court"); *United States* v. *Bellomo*, 944 F. Supp. 1160, 1164 (S.D.N.Y. 1996) ("[P]olygraph evidence never has been admitted in a federal trial in this Circuit, even in the three years since *Daubert*[.]"); *United States* v. *Black*, 831 F. Supp. 120, 123 (E.D.N.Y. 1993) (holding that, even after *Daubert*, "[t]he polygraph test is simply not sufficiently reliable to be admissible"). Other Circuits have affirmed district court decisions not to admit evidence of polygraph evidence based on, among other arguments, the lack of reliability of such testing and the danger of unfair prejudice as a result of the use of such evidence. *See, e.g.*, *United States* v. *Swayze*, 378 F.3d 834, 837 (8th Cir. 2004) ("When two witnesses contradict each other, juries, not polygraph tests, determine who is testifying truthfully.") (citation omitted); *United States* v. *Prince-Oybo*, 320 F.3d 494, 500 (4th Cir. 2003) (upholding circuit's "per se rule against polygraph evidence").

The Honorable Colleen McMahon                                                                                   Page 3
May 6, 2008

      Moreover, the United States Supreme Court has stated that "there is simply no consensus that polygraph evidence is reliable" and that "the scientific community remains extremely polarized about the reliability of polygraph techniques." *United States* v. *Scheffer*, 523 U.S. 303, 309 (1998).  In *Scheffer*, the Supreme Court upheld the constitutionality of Military Rule of Evidence 707, which categorically bans the admission of polygraph evidence in court-martial proceedings, without a hearing.  The Supreme Court noted that federal and state courts continue to express doubt as to the reliability of polygraph evidence and found that "there is simply no way to know in a particular case whether a polygraph examiner's conclusion is accurate, because certain doubts and uncertainties plague even the best polygraph exams." *Id.* at 312.  Thus, "unlike expert witnesses who testify about factual matters outside the juror's knowledge, such as the analysis of fingerprints, ballistics, or DNA found at a crime scene, a polygraph expert can supply the jury only with another opinion, in addition to its own, about whether the witness was telling the truth." *Id.* at 312-313.

      Applying these principles to this case, there is no basis for permitting Victim-1 and Victim-2 to be cross-examined about the results of the polygraph examination that they underwent.  As the foregoing shows, the unreliability of the science underlying polygraph examinations warrants exclusion of polygraph evidence as a general matter, because of the danger that a failed polygraph examination will falsely appear to a jury to be scientifically conclusive when, in fact, it is proof of virtually nothing.  Moreover, skepticism about the reliability of polygraph evidence is especially appropriate here, where multiple admitted participants in the robbery will confirm that Victim-1 and Victim-2 were mere victims and that their denials of involvement are true.

      Thus, permitting the defense to impeach Victim-1 and Victim-2 by referring to the polygraph examination will do nothing more than confuse and mislead the jury.  As the Second Circuit has repeatedly emphasized, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *United States* v. *Crowley*, 318 F.3d 401, 417 (2d Cir. 2003) (quoting *Delaware* v. *Van Arsdall*, 475 U.S. 673, 679 (1986));  *United States* v. *Cambindo Valencia*, 609 F.2d 603, 630 (2d Cir. 1979) (reaffirming that the district court has broad discretion over the scope of cross-examination).  It is within the discretion of the district court to exclude evidence when its "probative value" is substantially outweighed by the danger of "unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay [or] waste of time."  Fed. R. Evid. 403.

      Accordingly, the Government respectfully requests that the defense be precluded from questioning Victim-1 and Victim-2 regarding the results of their polygraph examination.

The Honorable Colleen McMahon	Page 4
May 6, 2008

## II.   The Defense Should Be Precluded From Cross-Examining Victim-4 About His Prior Conviction.

On November 14, 2006, several of the defendants in this case robbed and kidnapped a truck driver ("Victim-4").  The Government intends to call Victim-4 to testify about this incident.  The Government respectfully moves to preclude the defense from cross-examining Victim-4 about his prior conviction for armed robbery in 1982.[1]

### A.   Applicable Law

Rule 608(b) of the Federal Rules of Evidence governs impeachment of a witness by evidence of prior bad conduct.  Rule 608(b) provides:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence.  They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness. . . .

Rule 609(a)(1) governs the admissibility of prior convictions for witnesses other than an accused.  That rule provides that "[f]or the purpose of attacking the character for truthfulness of a witness . . . evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year . . . ."  Fed. R. Evid. 609(a)(1).  The rule further states:

> Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later

---

[1] In addition to his armed robbery conviction, Victim-4 has been arrested five times since 2001 for what his criminal history record identifies as "assault and battery – family member," "abuse and neglect of children," "destruction of property, monument," "profane, threatening language over a public airway," and contempt of court in connection with violating a protective order.  There is no disposition listed for any of these arrests.  The Government is attempting to gather more information about these arrests and may seek to preclude cross-examination concerning some or all of them, depending on what is discovered.  The Government also intends to call the victim of a November 13, 2006 robbery ("Victim-3") as a witness.  Victim-3's criminal history record identifies numerous arrests between 1971 and 2005, but no dispositions for any of the arrests.  The Government is attempting to gather more information about these arrests and may seek to preclude cross-examination concerning some or all of them, including a possible 1985 conviction for animal cruelty, depending on what is discovered.

The Honorable Colleen McMahon                                                                     Page 5
May 6, 2008

>   date, unless the court determines, in the interests of justice, that the probative
>   value of the conviction supported by specific facts and circumstances substantially
>   outweighs its prejudicial effect.

Fed. R. Evid. 609(b).

The Federal Rules of Evidence provide broad discretion to the trial judge to limit cross-examination. Fed. R. Evid 608(b) provides, in relevant part, that, "in the discretion of the court, if probative of truthfulness or untruthfulness," specific instances of prior conduct "may" be inquired into "on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness." Fed. R. Evid. 611(b) makes clear, however, that "[c]ross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness." Fed. R. Evid. 611(a) also provides that the Court should "protect witnesses from harassment or undue embarrassment."

The Court of Appeals for the Second Circuit repeatedly has ruled that "[t]he scope and extent of cross-examination are generally within the sound discretion of the trial court, and the decision to restrict cross-examination will not be reversed absent an abuse of discretion." *United States* v. *Rosa*, 11 F.3d 315, 335 (2d Cir. 1993); *see also United States* v. *Sasso*, 59 F.3d 341, 347 (2d Cir. 1995) (same); *United States* v. *Blanco*, 861 F.2d 773, 781 (2d Cir. 1988) (same).

   **B.   Discussion**

Victim-4's conviction for armed robbery occurred in 1982, more than 25 years ago, when Victim-4 was 19 years old. Accordingly, the Court should hold that this arrest is inadmissable for impeachment purposes because it occurred outside the ten-year period prescribed by Rule 609(b). As noted above, Rule 609(b) clearly states that evidence of a conviction is "not admissible if a period of more than ten years has elapsed . . . unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." The drafters of Rule 609(b) intended that convictions more than ten years old be used for impeachment "very rarely and only in exceptional circumstances." S. Rep. 93-1277, 93rd Cong., 2d Sess., *reprinted at* 4 U.S.C.C.A.N. 7051, 7062; *see also Zinman* v. *Black & Decker (U.S.), Inc.*, 983 F.2d 431, 434 (2d Cir. 1993). Here, Victim-4's conviction hardly presents the type of "exceptional circumstances" warranting departure from the strong presumption embodied in Rule 609(b). Far from having probative value that substantially outweighs its prejudicial effect, Victim-4's 1982 conviction for a robbery offense that has nothing to do with his character for truthfulness is of virtually no probative value at all. *See, e.g., United States* v. *Estrada*, 430 F.3d 606, 616-19 (2d. Cir. 2005) (noting that violent crimes ranked "low" on the "scale of probative worth on credibility").

Accordingly, the Court should preclude the defense from cross-examining Victim-4

The Honorable Colleen McMahon                                                                                                    Page 6
May 6, 2008

about his 1982 conviction for armed robbery.

### III. The Defense Should Be Precluded From Cross-Examining Detective Robert Goldrick About A Prior Adverse Credibility Finding.

The Government intends to call Detective Robert Goldrick of the Orangetown Police Department as a witness at trial. Detective Goldrick is expected to testify that on January 3, 2007, he participated in the arrest of defendant Rafael Rodriguez and co-conspirator Jorge Flores in New Jersey. Detective Goldrick is expected to testify, among other things, that during the arrest encounter he discovered (a) a knapsack in the trunk of a car in which Flores and Rodriguez had been riding that contained, among other things, two firearms and flexible plastic ties like those used in the charged robberies, and (b) a bulletproof vest on Rodriguez's person.

More than 18 years ago, the Appellate Division of the Supreme Court of the State of New York found that Goldrick, then a patrol officer, "tailored" his testimony at a suppression hearing in order to avoid suppression of evidence that he had discovered during a traffic stop. *See People* v. *Miret-Gonzalez*, 159 A.D.2d 647, 649 (N.Y. App. Div. 1990). The Appellate Division reached this conclusion even though the Supreme Court Justice who had actually heard Goldrick's testimony credited that testimony and denied the defendant's suppression motion. (*Id.*)

The Government respectfully moves to preclude the defense from cross-examining Detective Goldrick about this prior adverse credibility finding.

#### A. Discussion

As noted above, Federal Rule of Evidence 608(b) vests the Court with discretion to permit inquiry of a witness on cross-examination regarding "specific instances of the conduct of a witness," if the conduct is "probative of truthfulness or untruthfulness." Fed. R. Evid. 608(b). Rule 611 gives the Court the power to exercise "reasonable control over the mode and order of interrogating witnesses" so as to "protect the witnesses from harassment or undue embarrassment." Fed. R. Evid. 611(a); *see, generally, United States* v. *Devery*, 935 F. Supp. 393, 405-07 (S.D.N.Y. 1995) (Preska, J.) (discussing authority of court to limit cross-examination pursuant under FRE 608(b) and 611). Here, because the Appellate Division's nearly two-decade old adverse credibility finding is unrelated to Detective Goldrick's anticipated testimony in this case, there is no basis for cross-examination about that earlier finding.

The Second Circuit's decision in *United States* v. *Cruz*, 894 F.2d 41 (2d Cir. 1990), is instructive. In *Cruz*, a defendant sought to impeach a government informant at trial before Judge Keenan with a transcript of a sentencing hearing in a different case in which another judge (Judge Korman of the Eastern District of New York) had found the informant's testimony not credible.

Judge Keenan precluded such cross-examination, and the Second Circuit affirmed, stating:

> The transcript [of the sentencing proceeding] reflects only a finding that [the witness] lacked credibility as to his testimony in that case, not that he was lacking in veracity generally. In the absence of any connection between the subject of [the witness' testimony in the first case] and his testimony in the case at bar, it cannot be said that Judge Korman's finding as to the former is relevant in any way to a resolution of the issues in [the present] case.

*Cruz*, 894 F.2d at 42-43.

Here, as in *Cruz*, there is no connection whatsoever between Detective Goldrick's testimony in a suppression hearing 18 years ago and his expected testimony at trial in this case. The cases are not related in any way, and they are separated by an enormous amount of time. Although both involve obtaining evidence from vehicles, the Appellate Division found that Goldrick "tailored" his testimony to "meet constitutional objections," while, of course, the jury will not be presented with any potential "constitutional objections" at the trial in this case, since those will have been resolved by the Court in advance of trial. Goldrick will simply be testifying about his discovery of certain evidence, a matter that is not reasonably in dispute given the Government's possession of the evidence and the expected corroborating testimony of others at the scene.

Thus, the conclusion of a court that was not even present for Goldrick's testimony that Goldrick "tailored" his testimony to prevent suppression of evidence recovered in 1987 – a conclusion not drawn by the judge who actually observed Goldrick's testimony and who relied on that testimony to deny the defendant's suppression motion – is of no legitimate, probative value to the jury that will evaluate Goldrick's truthfulness in this case. *See Cruz*, 894 F.2d at 43; *United States* v. *Pena*, 89 Cr. 410 (SWK), 1992 WL 188371, *5 n.9 (S.D.N.Y. July 30, 1992) (holding that two prior federal judges' determinations that an agent had falsely testified was irrelevant "absent a showing of a connection between [the agent's] past testimony and the testimony at bar"); *United States* v. *Rollins*, 96 Cr. 149 (LBS), 1996 WL 451383 (S.D.N.Y. Aug. 8, 1996) ("The fact that judges have disbelieved [a witness's] testimony in the past is irrelevant to his truthfulness [in the instant proceeding]."); *Jimenez-Garcia* v. *United States*, 97 Civ. 2911 (MBM), 1998 WL 132788, *3 (S.D.N.Y. Mar. 24, 1998) (noting in denial of *habeas* petition that under *Cruz*, defendant would not have been able to cross-examine agents on prior adverse credibility findings made by judges in unrelated cases); *contrast United States* v. *Smith*, 2997 WL 188734 (S.D.N.Y. Jan. 24, 2007) (Holwell, J.) (permitting limited cross-examination of police officer regarding prior adverse credibility finding, where the subject matter of the officer's testimony in both cases was the same, *i.e.*, the legality of a search). Cross-examination on that subject, however, would be unfairly prejudicial, in that it would unnecessarily direct the jury's attention to purported misconduct from long ago by one of the law enforcement agents who participated in the investigation of the defendants in this case, even though that purported misconduct is of no meaningful relevance to any

The Honorable Colleen McMahon  Page 8
May 6, 2008

issue in this case, including the truthfulness of Detective Goldrick's testimony at this trial.

      Accordingly, for the foregoing reasons, the Court should preclude the defense from cross-examining Detective Goldrick about the prior adverse credibility finding.

                        Respectfully submitted,

                        MICHAEL J. GARCIA
                        United States Attorney


By:        /s/_____
      Michael A. Levy
      Nola B. Heller
      Assistant United States Attorneys
      (212) 637-2346/2631

cc (by ECF):   Sam Braverman, Esq. (Attorney for Plutarco Angulo-Aguirre)
               Paul P. Rinaldo, Esq. (Attorney for Rafael Rodriguez)
               George E. Fufidio, Esq. (Attorney for Angel Diaz)
               Michael K. Burke, Esq. (Attorney for Victor Diaz)
               Clinton W. Calhoun III, Esq. (Attorney for Jorge Cedeno)