## BURKE, MIELE & GOLDEN, LLP

30 MATTHEWS STREET
SUITE 303A
POST OFFICE BOX 216
GOSHEN, N.Y. 10924
(845) 294-4080
FAX (845) 294-7673

PATRICK T. BURKE
ROBERT M. MIELE *
RICHARD B. GOLDEN
MICHAEL K. BURKE

DENNIS J. MAHONEY, III
KELLY M. NAUGHTON**
KARIN T. ANTIN

JOSEPH P. MCGLINN (1941-2000)

* ADMITTED IN NEW YORK & NEW JERSEY
** ADMITTED IN NEW YORK & MASSACHUSETTS

ROCKLAND COUNTY OFFICE:
100 WASHINGTON AVENUE
POST OFFICE BOX 397
SUFFERN, N.Y. 10901
(845) 357-7500
(845) 357-7321 (FAX)

REPLY TO:  ☐ ORANGE CO.
           ☐ ROCKLAND CO.

Respond to Post Office Box

May 12, 2008

Honorable Colleen McMahon
United States District Judge
United States District Court
500 Pearl Street
New York, New York 10007

<u>**Via Facsimile (212) 805-6326**</u>

Re: United States v. Angulo-Aguirre, et al (Victor Diaz)
07 CR 387 (CM)

Dear Judge McMahon:

This letter is submitted on behalf of my client Victor Diaz in opposition to the government's motions *in limine* dated May 6, 2008, and requesting reconsideration of the Court's May 9th 2008, decision. For the reasons stated below and those stated in co defense counsel submissions, the government's motions should be denied.

The government has moved to (1) preclude defendants from cross examining the two victim-witnesses about the results of a polygraph examination; and (2) cross examining a law enforcement witness about a prior adverse credibility finding.

### I. <u>The Defendants should not be precluded from cross-examining the victims-witnesses about their failed polygraph examinations</u>

a. **The Bearing of the Polygraph Test on the Witnesses' Credibility Should Be Determined By the Jury.**

In the government's October 4, 2007 Rule 16(a) disclosures the government states the following:

> Pursuant to our obligations under *Brady v. Maryland,* 373 U.S. 83 (1963), and its progeny, we are informing [the defendants] that the victims that were kidnapped in this case were unable to identify any of the perpetrators from photo arrays. Additionally, one victim ("Victim 1") told the police that the perpetrators appeared to be police officers and were wearing blue caps and uniforms. Victim 1 further described the person who struck him as a female, dark-skinned and possibly Jamaican or Dominican. Victim 1 also described the perpetrator who drove the truck as either Puerto or Cuban. Victim 1 told the police how Victim 1 and Victim 2 had discussed how the perpetrators resembled three former dispatchers from their trucking company, each of whom had been unhappy about being recently dismissed from the company. However, Victim 1 and Victim 2 were each subjected to polygraph examinations. Victim 1 and Victim 2 each answered "no" to questions about whether they planned with anyone to steal the contents of the truck, or whether they know who stole the perfume. The polygraph examiner's opinion was that Victim 1's and Victim 2's physiological responses to the questions were indicative of deception.

(Attached hereto as Exhibit A)

In *United States v. Hart,* 344 F. Supp. 522, 524 (D.C.N.Y. 1971), a case similar the case at hand, the Honorable Orrin Judd was asked to "examine a *Brady*-type issue and not a pure question of the reliability of the polygraph tests."*Id.* at 522. In *Hart* the Court found that the polygraph examination results were admissible where the government, before trial, requested that its principal witness submit to polygraph tests, and then reject the conclusions of those tests. *Id.* at 524. The Court went on to further find the polygraph results should be admissible and that the bearing of the lie detector test on the principal witness's credibility should be determined by the jury not the court prior to trial. *Id.* The court in *Hart* found that the defendants are entitled to inquire concerning any investigations made by the government that might have put it on notice that a government witness was untruthful. *Id* at 523 *citing, Napue v. Illinois, 360 U.S. 264 (1959); United States v. Polisi,* 416 F2d. 573, 577 (2nd Cir. 1969).

In its May 6, 2008 motion in *limine* the government states "apart from the polygraph examiner's conclusions, **there is no other indication that the Victims' answers** to the two questions-*i.e.* their denials of any involvement in the robbery-were false." This statement, left unexplained, seems odd. If the Agents believed that the two victims were not involved they would not have had them polygraphed. The Agents were suspicious and did not believe the two victims. The Agents beliefs and suspicions were confirmed with the polygraph results.

Here, the Court is also asked to examine a *Brady*-type issue and not to answer the question about the reliability of polygraph examinations. In this case, the government decided that as a result of the questions that were posed by its Agents and the responses given by the two principal witnesses during "several" interviews they were going to have the witnesses polygraphed. The government indicated in its May 6, 2008 motion in *limine* that the two questions that were asked were: "Did you plan with anyone to steal the perfume?" and "Do you know who stole the perfume?" Victim 1 & 2 both answered "no" to those questions. The government's polygraph examiner found that the witnesses' responses were indicative of deception. It is quite obvious that as a result of the several interviews before the polygraph the Agents did not believe or at the very least, were suspicious of Victim 1's & Victim 2's responses

denying any involvement. The Agents beliefs and suspicions were confirmed by the polygraph results. Even though the exam results confirm the Agents beliefs and suspicions the government has chosen to reject them. In *Hart* the Court ordered that the government make available for trial the agents or witnesses who participated in directing that the polygraph be taken and the agents or witnesses who determined that the results of the tests did not impair the principle witnesses' credibility. *Supra. at 524.*

Here, the government wants to go one step further and not only reject the polygraph results of its own Agent but to rebut the exam result and bolster the victims' deceptive response with testimony from cooperating witnesses.

The Court should find, as the Court found in *Hart*, that the polygraph results and the investigation that preceded the examinations are admissible so that the jury may adequately assess the credibility of the witnesses.

### b. The Defendants Should Be Permitted to Inquire of the Government Witnesses and Victim 1 & Victim 2 pursuant to 404(b) about the uncharged crime under 18 U.S.C. 1001

Alternatively, the Defendants' should be permitted to cross examine Victim 1 & Victim 2 about the uncharged §1001 crimes for lying to Federal Agents during the course of a criminal investigation about their involvement in the perfume thefts and subsequent denials. This United States Attorney office has previously charged defendants with §1001 violations for false statements to polygraph examiners. *See, U.S. v. Anderson*, 260 F.Supp2d. 310,314 *fn.* 2 (D.Mass. 2003) *citing*, the highly publicized case of *United States v. Hagazy*, 02 MAG 53. The defendants should be permitted to cross examine the victims' about these uncharged crimes.

## II. Victim 3 and 4 need to be identified so that their prior criminal history may be determined.

On page 4 in the footnote the government's motion in *limine* the government indicates that Victim 4 has been arrested five times since 2001 for a variety of offenses and that there is no disposition listed for any of these arrests but that the government is attempting to gather more information about these arrests. Similarly, the government states that Victim 3 has numerous arrests over a 34 year period (1971-2005) but that there is no dispositions reported. Since at this late stage the government has not been able to determine the dispositions of these arrests the victims identifying information should be provided to the defendants so that they may attempt to determine the dispositions of these offenses.

### III. The Defendants should be permitted to cross examine Detective Goldrick about the prior adverse credibility finding

In the Court's May 9, 2008 decision, the Court agrees with the government's arguments that the defendants should not be permitted to inquire about an adverse credibility determination at a suppression hearing from eighteen years ago. It seems from the Court's decision that it was swayed by the argument that because adverse credibility regarding Detective Goldrick had to do with the constitutionality of the search at a suppression hearing it was not an issue that would come before a jury. It is respectfully argued that the Appellate Division's finding should not be read so narrowly. First, when Detective Goldrick testified in *Miret-Gonzalez* as he will before this jury he was under oath. In *Miret-Gonzalez* the Appellate Division stated that "it is well settled that the issues of credibility are primarily for the trial court and its determinations are entitled great weight." *People v. Miret-Gonzalez*, 159 A.D.2d. 647, 649 (2nd Dep't 1990) With that general principle in mind the Appellate Division went on to find that:

> a reversal is warranted where the fact findings of the trial court are manifestly erroneous or so plainly unjustified by the evidence that the interests of justice necessitate their nullification (5A C. J. S., Appeal and Error, § 1656[3]). We refuse to credit testimony which has all appearances of having been patently tailored to nullify constitutional objections. In evaluating testimony we should not discard common sense and common knowledge. This concept is well stated in section 649 of 22 New York Jurisprudence, Evidence, as follows: 'The rule is that testimony which is incredible and unbelievable, that is, impossible of belief because it is manifestly untrue, physically impossible, contrary to experience, or self-contradictory, is to be disregarded as being without evidentiary value, even though it is not contradicted by other testimony or evidence introduced in the case.'

No matter how long ago, the Appellate Division described Detective Goldrick's sworn testimony was incredible and unbelievable because it was manifestly untrue, physically impossible that is should be disregarded as without evidentiary value is highly probative and the defendants should not be precluded from inquiring about this prior adverse finding.

Mr. Victor Diaz joins the arguments of his co-defendants in opposition to the government's motion in *limine*, to the extent those arguments are applicable to him.

The Court's consideration of the foregoing is appreciated.

Respectfully submitted,

*Michael K. Burke*

MICHAEL K. BURKE

Cc: Nola Heller/Michael A. Levy (by ECF)
Assistant United States Attorneys
Defense Counsel (by ECF)

4