UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————x

UNITED STATES OF AMERICA,

    -against-

07 CR 387-06 (CM)

VICTOR DIAZ,

               Defendant.

———————————————————————x

DECISION AND ORDER REGARDING MOTION FOR COMPASSIONATE RELEASE

McMahon, J.:

Victor Diaz was sentenced in 2009 to 262-months in prison for his role in a truck-hijacking conspiracy— he is scheduled to be released April 23, 2025. BOP Inmate Locator 11/11/24.

Before the Court is Diaz's motion for compassionate release, filed pursuant to 18 U.S.C. §3582(c) (1)(a)(i) and 28 C.F.R. § 571.61. Diaz asks that the Court immediately release him from prison and allow him to be deported—a collateral consequence of his conviction—to his native Ecuador.

First, Diaz argues that his sentence should be reduced because two of his co-conspirators with greater culpability received lower terms of imprisonment when they were resentenced as a result of their 18 U.S.C. § 924(c) convictions being set aside. Diaz argues that the resulting sentencing disparity qualifies as "extraordinary and compelling reasons" under U.S.S.G. § 1b1.13(b)(5)'s "other reasons" category.

1

Second, Diaz, who is 65 years old, has served more than 10 years of imprisonment and more than 75 percent of his term, asserts that he has age-related health deterioration that warrants a reduction under U.S.S.G. § 1b1.13(b)(2).

Third, Diaz asserts that he has been rehabilitated while in custody, and argues that this rehabilitation, taken in consideration of his other two asserted bases, further supports his request for a reduction under U.S.S.G. § 1b1.13(d).

The Government opposes the motion on the grounds that Diaz has failed to demonstrate extraordinary and compelling reasons warranting compassionate release, and the sentencing factors at 18 U.S.C. § 3553 weigh against a reduction in sentence.

### Background

Victor Diaz was one of eight co-defendants convicted in this case for their role in an armed robbery, hijacking and kidnapping conspiracy. Defendants Plutarcho Angulo-Aguirre and German Cuadrado were the criminal masterminds who came up with the criminal plan to hijack tractor trailer trucks filled with valuable merchandise (expensive perfume, cosmetics, etc.), and put the gang of thugs together to carry out the scheme. ECF 159 at 1. Angulo-Aguirre and Cuadrado first hired Rafael Rodriguez and Angel Diaz (not to be mistaken with the instant movant Victor Diaz), two violent criminals whose role would be to forcibly restrain the unwitting truck drivers at gunpoint, while others in the crew made off with the contents of the truck trailers. Cuadrado and Rodriguez filled the balance of their crew with, *inter alia*, drivers for the hijacked trucks, insiders at the warehouses where the merchandise would be off-loaded, men to physically transfer the merchandise from trailers, and those charged with fencing the stolen goods.

2

The first of the successful robberies occurred on September 13, 2006. Victor Diaz, along with co-conspirators German Cuadrado, Jorge Flores, Plutarco Angulo-Aguirre, Rafael Rodriguez, and Angel Diaz ("Angel"), hijacked a tractor trailer carrying more than $500,000 worth of perfume products in Blauvelt, New York. (PSR ¶¶ 25, 29). Victor Diaz's planned role was to procure and drive the van in which they would hold the kidnapped truck drivers during the kidnapping. (PSR ¶ 27). Ultimately, however, because the location of the robbery and kidnapping was more public than originally planned, the crew decided not to use the van to restrain the two drivers, and instead restrained them inside the sleeper cabin of the victims' truck. (PSR ¶ 29). Nonetheless, Victor Diaz was present for the robbery, during which his co-conspirators pistol-whipped both drivers, tied them up with plastic flex-ties and sat on top of them in the truck's cabin. (PSR ¶ 30). The conspirators took the truck to a warehouse in Towaco, New Jersey and unloaded it. (PSR ¶¶ 30-31). Victor Diaz and a co-conspirator then took charge of selling the perfume to an individual in Queens, New York for approximately $80,000, of which $50,000 was shared by Angel and Rodriguez, who had been the group's gunmen. (PSR ¶ 32). Diaz and the six other crew members split the remaining $30,000. (*Id.*).

On November 14, 2006, Victor Diaz participated in a second armed kidnapping and robbery of the driver of a truck containing over $175,000 worth of cosmetic products. (PSR ¶¶ 33-34). Victor Diaz and a co-conspirator followed the truck in a van from Teterboro, New Jersey deep into Pennsylvania, and were joined by other members of the crew *en route*. (PSR ¶¶ 34-35). When the truck stopped at a truck stop in Pine Grove, Pennsylvania, two of Diaz's coconspirators entered the truck, waited its driver to return after paying for gas, pointed a revolver at his head, forced him to lie down in the truck's sleeper cabin, and tied him up with flex-ties. (PSR ¶ 36). As they drove the truck back to New Jersey, a tracking device inside the truck began

3

beeping, so they disconnected its tractor (which they believed contained the tracking device) from its trailer. (PSR.¶ 37). Victor Diaz and one of his coconspirators stole another tractor from a nearby location as a substitute. (*Id.*). His coconspirators then drove the first tractor to the side of a rural road in White Haven, Pennsylvania, where they abandoned it with the restrained driver still inside. (PSR ¶ 37). The conspirators then drove the second stolen tractor, with the stolen trailer attached, to Paterson, New Jersey, where they unloaded its contents. (PSR ¶ 38). The coconspirators sold its contents for approximately $70,000 to $90,000, with the proceeds split among Victor Diaz and the six crew members with whom he had committed the robbery. (*Id.*).[1]

### Compassionate Release

Under 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act, a court "may not modify a term of imprisonment once it has been imposed," except under limited circumstances. One such circumstance is the so-called compassionate release provision, which provides that a district court "may reduce the term of imprisonment" where it finds "extraordinary and compelling circumstances." § 3582(c)(1)(A)(i). A motion under this provision may be made by either the Bureau of Prisons or a defendant (prior to the First Step Act of 2018, only the BOP could initiate a compassionate release motion on behalf of a defendant), but in the latter case only "after the defendant has *fully exhausted all administrative rights* to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* (emphasis added). Thus, where a compassionate release motion is brought by a defendant who has not "fully exhausted all administrative rights," the district court "may not" modify his term of imprisonment. If, however,

---

[1] On July 4, 2006, a smaller group, which included Victor Diaz, had been successful in breaking through a wall of the warehouse, but tripped an alarm upon entering and had been unable to get away with any of the merchandise. (PSR ¶ 27 fn.1).

a defendant demonstrates that he has exhausted his administrative remedies with the BOP, the Court must then consider whether the defendant has met his burden of establishing "extraordinary and compelling circumstances" warranting release.[2]

Congress has historically tasked the United States Sentencing Commission with providing guidance on what circumstances could be considered sufficiently extraordinary and compelling to justify a reduction in sentence. *United States v. O'Bryant*, No. 16 CR. 0317-3 (PAE), 2023 WL 8447995, at *4 (S.D.N.Y. Dec. 6, 2023), citing *United States v. Brooker*, 976 F.3d 228, 232 (2d Cir. 2020). Before November 1, 2023, the Sentencing Commission's only guidance on this point had been promulgated prior to the enactment of the First Step Act. This guidance thus applied only to a "motion of the Director of the Bureau of Prisons," *see* U.S.S.G. § 1B1.13 (historical note), and not "to compassionate release motions brought by defendants." *Id.* citing *Brooker*, 976 F.3d at 236. Accordingly, the Second Circuit held in 2020, the guidance "[could not] constrain district courts' discretion to consider whether any reasons [were] extraordinary and compelling" in such cases. *Id.*; *see also id.* at 237 ("Neither Application Note 1 (D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion.").

On November 1, 2023, the Sentencing Commission amended the Guidelines so that it now provides guidance for courts in deciding petitions initiated by both BOP and defendants. *See generally* U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28,254 (effective Nov. 1, 2023). The Commission also tweaked the Guidelines language— expanding in part and clarifying the commission's guidance on what might constitute extraordinary and compelling circumstances warranting a reduction in sentence. The Commission identifies six

---

[2] "A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue." *See, e.g., United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992).

categories of circumstances that, singly or in combination, may qualify as extraordinary and compelling:

(1) Medical circumstances of the defendant. U.S.S.G. § 1B1.13(b)(1). In addition to previously recognized circumstances such as a defendant suffering from a terminal illness or a serious medical condition, id. § 1B1.13(b)(1)(A)–(B), the amended guidelines direct courts to consider whether the defendant is "suffering from a medical condition that requires long-term or specialized medical care" that is not being provided in prison and without which the defendant is at risk of serious health deterioration or death, id. § 1B1.13(b)(1)(C), or is held at a facility affected by or at imminent risk of being affected by an outbreak of infectious disease or other "ongoing public health emergency declared by the appropriate federal, state, or local authority," where "due to personal health risk factors and custodial status," the defendant is at a greater risk of severe complications upon exposure, and where "such risk cannot be adequately mitigated in a timely manner." Id. § 1B1.13(b)(1)(D).

(2) Age of the defendant. When coupled with a deterioration in physical or mental health that corresponds with the aging process, this can support sentence reduction. U.S.S.G. § 1B1.13(b)(2).

(3) Family circumstances of the defendant. Where the defendant is the "only available caregiver" for an immediate family member, this may support a sentence reduction. See id. § 1B1.13(b)(3).

(4) Victim of Abuse. Where the defendant, while in custody on the sentence in question was a victim of sexual abuse, or physical abuse resulting in serious bodily injury, "committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant," and the misconduct was

"established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding," this may support a sentence reduction. Id. § 1B1.13(b)(4).

(5) Other Reasons. Where "[t]he defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4). *Id.* § 1B1.13(b)(5).

(6) Unusually long sentence. Where "a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances." U.S.S.G. § 1B1.13(b)(6).

Finally, neither the recent amendment to the Guidelines nor *Brooker* changed the mandate in § 3582(c)(1)(A)(i) that a court contemplating a defendant's release pursuant to that section must also consider the sentencing factors at 18 U.S.C. § 3553(a), to the extent they remain applicable, and determine whether they counsel for or against release. A court always retains discretion to deny a motion for compassionate release if, in its view, the § 3553(a) factors override what would otherwise present extraordinary and compelling circumstances for release.

### Diaz's Motion

Victor Diaz sentence of incarceration is scheduled to expire April 25, 2024. Since Diaz is not a United States citizen (he is Ecuadorian) he will not be released into the United States at the

end of his sentence; rather, he will deported directly from the Bureau of Prisons to his native Ecuador. By his instant motion, Diaz is essentially asking that the Court hasten that process by five months.

Diaz cites his age, length of time already served in prison, and deteriorating health as grounds for granting him release. Indeed, the text of the Sentencing Guidelines now expressly provides that the age of the defendant may be an extraordinary and compelling reason for a sentencing reduction. Specifically, if a "defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13(b)(2). Diaz is now 65 years old and has served both over 10 years in prison and more than 75 percent of his 262- month sentence. He also suffers from various medical maladies associated with aging. *See* Govt. Exh. B, *passim*. Thus, Diaz has made a colorable argument for relief pursuant to U.S.S.G. § 1B1.13(b)(2).

Diaz also argues that the reduction of two of his coconspirators' (Rafael Rodriguez and Jorge Cedeno) sentences following the vacating of their § 924(c) convictions has created an unwarranted sentencing disparity in this case; and, consequently, an "extraordinary and compelling reason" to grant his release under U.S.S.G. § 1b1.13(b)(5)'s "other reasons" category. Diaz argues that, while he "was an important member of the criminal crew in this case, [he] was, indisputably, less culpable than Rafael Rodriguez and Jorge Cedeno," (Mot. 8). At the time they were resentenced to time served in November 2021, Rodriguez and Cedeno had served approximately 178.5 months,' and 168 months' imprisonment, respectively. *See* 11/17/21 Rodriguez and Cedeno Resentencing Tr. at 7. Victor Diaz's projected release date of April 23,

8

2025 would result in him serving a total of approximately 205 months' imprisonment— as of today, Diaz has already served 200 months.'

Diaz's argument has merit—after all, Rodriguez and Cedeno were the hired guns whose actions most terrorized the victim drivers. While Diaz played a important role in carrying out the two robberies, even the Government conceded at sentencing that Victor Diaz played a lesser role than the hired guns Rodriguez and Cedeno, and the conspiracy architects Plutarcho Angulo-Aguirre and German Cuadrado, Thus, Diaz's "unwarranted disparity in sentencing" argument provides a basis for considering his release under the "other reason" category. U.S.S.G. § 1.13(b)(6).

Finally, Diaz asks that the Court consider his demonstrated rehabilitation while in prison. Indeed, Diaz has been a model prisoner. He has kept himself occupied with a job from the time he was arrested back in 2007 and has worked nearly continuously since then. Def. Exhibit E, BOP Work Records. He has but one disciplinary mention—interfering with the taking of the inmate count—over the more than seventeen years he has been in prison. Def. Exhibit C, BOP Disciplinary Records. BOP records also show that Diaz has taken numerous BOP continuing education and self-help programs. Def. Exhibit D, BOP Educational Records. The Court accepts that Diaz, at 65 years of age, is not the truck-hijacking thief that it sentenced a decade and a half ago.

While rehabilitation alone may not constitute "by itself" an "extraordinary and compelling reason" for a sentencing reduction, it may be "considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." U.S.S.G. § 1B1.13(d). In this case, the defendant's demonstrated rehabilitation tips the scales in favor of release.

9

Moreover, the Court is satisfied that allowing Diaz to be deported (never to set foot on U.S. soil a free man) five months earlier than scheduled, will not undermine the goals of sentencing set forth at 18 U.S.C. § 3553(a)— including, that the sentence reflect the nature and circumstances of the offense, the defendant's personal characteristics, the need to provide specific and general deterrence, and to promote respect for the law. Defendant has essentially served the entirety of his sentence. Had Diaz been a U.S. citizen, he would have already been released to a BOP community supervision program (halfway house). It is time to get Mr. Diaz off the Government dime.

Although the Court is inclined to modify Diaz's sentence today to time served, the Court must first solicit the position of the victims of Diaz crimes.  Under the Crime Victims' Rights Act, victims have "[t]he right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding." 18 U.S.C. § 3771(a)(4); *see also* Fed. R. Crim. P. 60(a)(3). Accordingly, the Government has fifteen days to garner and report the position of the victims.

This constitutes the decision and order of the Court.

Dated: November 26, 2024

Colleen McMahon
United States District Court Judge


BY ECF TO ALL PARTIES